# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JAY E. REESE, individually and on behalf of
all those similarly situated,

                                **Plaintiffs,**

-vs-                                                                    Case No.  6:17-cv-1574-Orl-41GJK

**FLORIDA BC HOLDINGS, LLC d/b/a
SYNERGY EQUIPMENT,**

                                **Defendant.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration, without oral argument, on the following motion:

| | |
|---|---|
| **MOTION:** | **CLASS REPRESENTATIVE'S MOTION FOR CONDITIONAL CLASS CERTIFICATION WITH INCORPORATED MEMORANDUM OF LAW** (Doc. No. 24) |
| **FILED:** | December 5, 2017 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

### I.   BACKGROUND.

On August 30, 2017, Jay E. Reese ("Plaintiff"), individually and as a class representative, filed a complaint alleging that Defendant, his former employer, violated the Fair Labor Standards

Act ("FLSA") by failing to pay him overtime.[1] Doc. No. 1. On December 4, 2017, Joshua Kennedy and Paul Celaya (collectively, "Opt-In Plaintiffs") filed their consents to join this litigation. Doc. Nos. 20, 21.

Defendant sells and leases landscaping and farming equipment out of twelve locations—ten in Florida and two in Georgia. Doc. No. 25-1 at ¶¶ 3, 4. Defendant employed Plaintiff and Opt-In Plaintiffs as "Sales Coordinators" in Defendant's Orlando and Daytona Beach, Florida, locations. Doc. No. 24-1 at 2, 3, 5, 6, 8, 9. Plaintiff and Opt-In Plaintiff Celaya worked in both the Orlando and Daytona Beach locations, and Opt-In Plaintiff Kennedy worked in the Orlando location. *Id.* at 3, 6, 9. Plaintiff and Opt-In Plaintiffs state that their primary job duty, and the primary job duty of the Sales Coordinators that they "came in contact with at [Defendant]" was "handling of the inside counter of the [Defendant's] location where they were working." *Id.* Defendant provided the following job description for its Sales Coordinators:

> A Sales Coordinator is a novice perspective into the equipment rental business. This position is responsible for developing customer relationships and handling their needs, tracking equipment locations, availability, and coordinating logistics, billing all sales and answering questions on invoices while working with the outside sales team to provide excellent customer service and support.
>
> PRINCIPAL DUTIES AND RESPONSIBILITIES
>
> - Efficient support of the sales staff to process sales invoices, contracts, credit applications and sales/finance reporting
> - Use Company provided systems/tools (i.e. Salesforce) to assist or complete in the documentation, tracking, recording, follow up, and capture all related sales activity in a timely and accurate manner.
> - Utilize strong communication skills to provide accurate support to the sales and management employees.

---

[1] In a claim unrelated to the FLSA claims, Plaintiff also alleges that Defendant tortiously interfered with Plaintiff's employment relationship with his subsequent employer. Doc. No. 1 at 11-12.

2

- Manage the receiving, organizing, locating and movement of equipment and attachments
- Maintain accurate inventory records
- Assist customers, by telephone or in-person, to complete necessary paperwork for purchase transactions
- Other duties as assigned

REQUIREMENTS

- Experience processing detailed paperwork
- Strong organizational skills and ability to manage multiple projects simultaneously
- Basic working knowledge of computer processes is necessary for day to day operations
- Experience and competency in Microsoft Office Suite
- Must have excellent communication and customer service skills
- While this is an office position, be willing and capable of going outside as needed throughout the day to review equipment inventory to fill sales orders

QUALIFICATIONS

- High school diploma or equivalent
- 2-5 years of administrative or sales support experience, preferably in a dealership environment
- Working knowledge of Microsoft Word, Excel, and Outlook
- Construction equipment experience preferred but not required

Doc. No. 25-2. Kelly Beem, Defendant's Human Resources Manager, states that Sales Coordinators generally manage customer accounts, anticipate customers' needs, try to grow relationships with customers, "are responsible for the initial contact with new customers, and they recommend products to customers based on an evaluation of their needs." Doc. No. 25-1 at ¶ 7. She states that Sales Coordinators' tasks vary and that they "are generally paid a combination of salary and commissions. The amount of ratio of salary and commissions payments varies between Sales Coordinators based on experience or other factors." *Id.* at ¶ 11.

Plaintiff and Opt-In Plaintiffs aver that they worked more than forty hours per week, but did not receive additional pay. Doc. No. 24-1 at 3, 6, 9. They state that Defendant "had a common policy of not paying Sales Coordinators' time-and-a-half their regular rate of pay for all overtime hours worked. Specifically, [Defendant] had a common policy of categorizing Sales Coordinators as exempt from overtime pay." *Id.* Plaintiff and Opt-In Plaintiffs state that they are aware of other Sales Coordinators working at the Orlando and Daytona Beach locations that did not receive overtime pay due to Defendant classifying Sales Coordinators as exempt. *Id.* The first affirmative defense Defendant asserts in its Answer is that "Plaintiff and any similarly situated employees were paid on a salaried basis and employed in a bona fide executive, administrative, or professional capacity and accordingly are exempt from overtime compensation under the FLSA." Doc. No. 5 at 7.

On December 5, 2017, Plaintiff filed "Class Representative's Motion for Conditional Class Certification with Incorporated Memorandum of Law" (the "Motion"). Doc. No. 24. Plaintiff asks the "Court to enter an Order certifying the following class: All Employees of [Defendant] who: (1) are or were employed by [Defendant] as 'Sales Coordinators' during the preceding three years; (2) were misclassified as exempt from the FLSA; and (3) worked more than forty hours in a work week without being paid proper overtime compensation." Doc. No. 24 at 3. On December 19, 2017, Defendant filed its "Response Opposing Plaintiff's Motion for Conditional Certification and for Court-Authorized Notice." Doc. No. 25. On January 8, 2018, with the Court's authorization, Plaintiff filed a reply to Defendant's response. Doc. Nos. 28, 31.

**II.     MOTION FOR CONDITIONAL CLASS CERTIFICATION.**

In the Motion, Plaintiff seeks relief under 29 U.S.C. § 216(b) of the FLSA and asks the Court to conditionally certify the following class: "All Employees of [Defendant] who: (1) are or were employed by [Defendant] as 'Sales Coordinators' during the preceding three years; (2) were misclassified as exempt from the FLSA; and (3) worked more than forty hours in a work week without being paid proper overtime compensation." Doc. No. 24 at 3. Plaintiff also asks that he be appointed class representative and that his counsel be appointed class counsel. *Id.* at 17-18. He requests that the Court permit and supervise notice to the class using the notice and opt-in form attached to the Motion and authorize a reminder notice to be sent to the class. *Id.* at 18. Finally, Plaintiff asks that the Court order Defendant to provide him with information regarding each individual in the class and permit the parties to file a joint motion to modify the Case Management and Scheduling Order, under the premise that if the Motion is granted, this case becomes a track three case. *Id.* at 19-20. If the Court finds "that sufficient interest has not been demonstrated for the proposed class," then Plaintiff asks that the Court conditionally certify the class that it deems Plaintiff does meet the requirements for. *Id.* at 18.

**A.     Legal Standard**

There is a two-step procedure for whether a FLSA collective action should be certified: 1) the notice stage; and 2) the decertification stage. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). The Motion falls under the notice stage. The notice stage is when "a district court determines whether other similarly situated employees should be notified." *Id.*

At the notice stage, "[a] plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Id.* (quoting *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). The standard for determining similarity at the notice stage is fairly lenient, not particularly stringent, and not heavy. *Id.* at 1261.

In addition to determining whether there are similarly situated employees to the plaintiff, the court must also "satisfy itself that there are other employees of the department-employer who desire to 'opt-in' . . . ." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991).

### B. Timing of Ruling on Motion

Defendant argues that the Court should defer ruling on whether to permit a class proceeding "until a complete record can be presented . . . ." Doc. No. 25 at 5. Defendant contends that the two-stage approach described above "would be imprudent in this case." *Id.* Defendant does not articulate why this case is particularly ill-suited for the two-stage analysis, and thus there appears to be no reason to depart from the sanctioned procedure in the Eleventh Circuit regarding FLSA collective actions. *Morgan*, 551 F.3d at 1259-60.

### C. Other Employees Desiring to Opt In

Plaintiff has the burden to provide a reasonable basis supporting his position that other aggrieved individuals exist in the broad putative class. *Hart v. JPMorgan Chase Bank, N.A.*, No. 8:12-CV-00470-T-27, 2012 WL 6196035, at *4 (M.D. Fla. Dec. 12, 2012). Plaintiff asks the Court to conditionally certify a class of all of Defendant's Sales Coordinators. Doc. No. 24 at 3. Defendant has ten Florida locations and two Georgia locations. Doc. No. 25-1 at ¶ 4.

Plaintiff and Opt-In Plaintiffs state that they worked in Defendant's Orlando and Daytona Beach locations as Sales Coordinators and that they "expect that other current and former Sales Coordinators of [Defendant] will join this litigation if they are given notice of it and an opportunity to join it." Doc. No. 24-1 at 3, 6, 9. Plaintiff provides no evidence that any Sales Coordinators in Defendant's eight other Florida locations or two Georgia locations are interested in joining this litigation.

It is recommended that the Court find that Plaintiff sufficiently demonstrates the requirement for issuance of notice that there are other employees in the Orlando and Daytona Beach locations that may wish to opt in to the FLSA action. *See Robbins-Pagel v. Wm. F. Puckett, Inc.*, No. 6:05-CV-1582-ORL-31DAB, 2006 WL 3393706, at *2 (M.D. Fla. Nov. 22, 2006) (finding sufficient evidence to establish a reasonable basis to believe that there were similarly situated individuals who may be interested in joining the action who worked in the same location as plaintiff, when plaintiff submitted the affidavit of herself and two others interested in joining the action, but declining to certify class consisting of workers at different locations than plaintiff). Plaintiff fails to show that there are Sales Coordinators in Defendant's other locations that would be interested in joining this litigation, however. *See Hart*, No. 8:12-CV-00470-T-27, 2012 WL 6196035, at *2, 12-14 (finding plaintiff failed to meet burden of demonstrating existence of others wishing to join the litigation because plaintiff submitted declarations from three viable opt-in plaintiffs from a proposed class of 2,887 employees nationwide, compared to defendant's nearly sixty declarations from putative class members that were not interested in joining the lawsuit); *Ramirez v. Urban Outfitters, Inc.*, No. 6:13-CV-1074-ORL-22GJK, 2014 WL 12573981, at *3 (M.D. Fla. Apr. 22, 2014) ("Plaintiff has failed to

demonstrate to the Court's satisfaction that other employees [in 181 stores in forty-one states] desire to opt-in based on the conclusory declarations of the three plaintiffs participating in this case."); *Rojas v. Uber Techs., Inc.*, No. CV 16-23670-CIV, 2017 WL 2790543, at *3 (S.D. Fla. June 27, 2017) (finding that plaintiff failed to meet burden of demonstrating that there were others that desired to opt in to his lawsuit when plaintiff wished to create a nationwide class, but only provided his declaration and one other employee's notice of consent to join).

### D.     Similarly Situated

Plaintiffs must be "'similarly situated' with respect to their job requirements and with regard to their pay provisions . . . ." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d at 1567–68. Plaintiff argues that Defendant's Sales Coordinators have similar pay provisions because they are all paid a salary plus a monthly commission. Doc. No. 24 at 11-12. Plaintiff contends that all Sales Coordinators have "substantially the same job duty—handling the inside counter of the [Defendant's] location where they worked." *Id.* at 12. Additionally, Plaintiff states that Defendant classified its Sales Coordinators as exempt from the FLSA. *Id.*

Defendant argues that Plaintiff is not similarly situated to all of its Sales Coordinators because the proposed class consists of Sales Coordinators "from different locations who had different supervisors, different rates of pay, and different duties." Doc. No. 25 at 8. Specifically, Defendant asserts that the differences include "(1) the employee's base salary; (2) the rate at which commissions were earned by the employee; (3) the commission guaranteed to each

employee; (4) the amount of hours worked by the employee; (5) the duties performed by the employee; and (6) the amount of PTO[2] or other leave taken by the employee." *Id.* at 8-9.

Plaintiff has the burden of demonstrating similarity. *Kelley v. Taxprep1, Inc.*, No. 5:13-CV-451-OC-22PRL, 2014 WL 10248251, at *2 (M.D. Fla. Apr. 2, 2014). Similar does not equal identical. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). Job duties, pay provisions, and whether the employees were subjected to a common policy that is the basis for the alleged FLSA violation are factors to be considered in determining whether Plaintiff is similarly situated to the proposed class. *Allen v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603-ORL-37KRS, 2017 WL 3701139, at *7.

At the center of this litigation is the allegation that the Sales Coordinators worked overtime, but were not paid for this work based on an administrative exemption applied to all Sales Coordinators. Regarding job duties, Plaintiff and Opt-In Plaintiffs assert that their primary duty and the primary duty of all of the other Sales Coordinators that they knew and came in contact with was handling the inside counters of Defendant's locations where they worked. Doc. No. 24-1 at 2, 3, 5, 6, 8. Additionally, Defendant provided a singular job description for all of its Sales Coordinators, which includes "other duties as assigned." Doc. No. 25-2. Thus, it appears that the Sales Coordinators are similarly situated to Plaintiff. *See Simpkins v. Pulte Home Corp.*, No. 608-CV-130-ORL-19DAB, 2008 WL 3927275, at *7 (M.D. Fla. Aug. 21, 2008) (finding that members of proposed class were similarly situated where there were "commonalities among the relevant job duties" and defendant's "own management has determined that these employees

---

[2] Defendant does not define "PTO." It can be an abbreviation for "paid time off." Ruth Mayhew, *What Does PTO Mean in HR Terms?*, Chron, http://smallbusiness.chron.com/pto-mean-hr-terms-60319.html (last visited Mar. 15, 2018).

are similar enough to be classified under the same exemptions for purposes of complying with the FLSA.").

Defendant's Human Resources Manager states that the Sales Coordinators' tasks "can vary based on numerous factors," Doc. No. 25-1, but Defendant does not explain how these varying tasks preclude a finding of similarity regarding the alleged FLSA violations. "The arguments regarding whether . . . individual issues predominate are properly addressed under the more stringent stage-two analysis." *Allen v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603-ORL-37KRS, 2017 WL 3701139, at *8 (finding that plaintiffs met the similarly situated requirement for conditional certification, even though defendant asserted the administrative exemption). At the conditional certification stage, the merits of the parties' claims are not weighed; instead, the plaintiff's burden focuses on their allegations of similarity, not refuting the defendant's arguments and defenses. *Id.* at *7. In *Allen*, the Court rejected the defendant's arguments against conditional certification because "they concern defenses that appear to be individual to each Plaintiff." *Id.* at *8.

Plaintiff meets his burden of demonstrating that his job duties are sufficiently similar to those of the proposed class in the Orlando and Daytona Beach locations. Plaintiff and Opt-In Plaintiffs aver that their and other Sales Coordinators' primary job duty was to handle the inside counter. Doc. No. 24-1 at 2, 3, 5, 6, 8. Defendant provided one job description for all of its Sales Coordinators, which included "other duties as assigned," thus not contradicting Plaintiff's and Opt-In Plaintiffs' declarations. Doc. No. 25-2. Finally, Defendant itself found that all of its Sales Coordinators are sufficiently similar to fall under the same FLSA exemptions from overtime pay. Doc. No. 5 at 7; Doc. No. 25 at 4.

Regarding pay provisions, there is no dispute that Sales Coordinators are paid a salary and a commission. Doc. No. 24-1 at 2, 3, 5, 6, 8, 9; Doc. No. 25-1 at ¶ 11. The Human Resources Manager does state that in November 2016, Defendant began paying its Sales Coordinators for overtime, but does not state how this overtime rate was calculated. Doc. No. 25-1 at ¶ 12. Although the Sales Coordinators were paid different amounts for their salaries and different rates for their commissions, this does not preclude a finding of similarity regarding pay provisions. *See Russell v. Life Win, Inc.*, No. 8:11-CV-2802-T-26TBM, 2014 WL 7877787, at *3 (M.D. Fla. Apr. 23, 2014) (defendant's argument that differences in commission rates, seniority, and hours worked applicable to an exemption from overtime pay under the FLSA may result in individual inquiries attacks the merits of the claim, which are not weighed "in determining whether potential opt-in plaintiffs may be similarly situated.'"). As Plaintiff presents evidence that the Sales Coordinators were paid a salary plus commission, the proposed collective class's pay provisions are similarly situated to Plaintiff's.

The final factor for the Court to consider in determining "similarly situated"—whether the employees were subjected to a common policy that is the basis for the alleged FLSA violation—also weighs in Plaintiff's favor. *Allen v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603-ORL-37KRS, 2017 WL 3701139, at *7. Plaintiff alleges that Defendant misclassified Plaintiff and its Sales Coordinators as exempt from the FLSA's overtime provisions. Doc. No. 2 at ¶¶ 22, 23. Defendant corroborates this allegation by asserting as an affirmative defense that the Sales Coordinators are exempt from the FLSA's overtime provisions under the executive, administrative, or professional capacity exemption in 29 U.S.C. § 213(a)(1). Doc. No. 5 at 7.

Plaintiff sufficiently demonstrates at the conditional certification stage that he is similarly situated to Sales Coordinators in the Orlando and Daytona Beach locations in terms of job duties, pay provisions, and a common policy allegedly violating the FLSA's overtime provisions. Accordingly, it is recommended that the Court grant Plaintiff's request that the proposed class be conditionally certified as to Defendant's Orlando and Daytona Beach locations.[3]

E.   Notice

Plaintiff proposes both a notice and a thirty-day reminder be sent to potential class members and attaches as exhibits a proposed notice and reminder. Doc. No. 24 at 13-17; Doc. No. 24-2. Defendant raises several objections to the proposed notice and argues that a reminder is unnecessary. Doc. No. 25 at 11-13.

Defendant argues that it could be inferred from the proposed notice that the Court is sponsoring the litigation. *Id.* at 11. Defendant also argues that the description of the lawsuit is biased, the no-retaliation footnote is an improper solicitation, and the notice does not inform potential class members that they could have their own attorneys represent them in this litigation. *Id.* at 11-12.

It is recommended that the proposed notice be amended. First, to remove any perceived bias, it is recommended that the word "misclassified" in the class description be replaced with "classified" and the words "unlawfully" and "proper" be deleted from the penultimate sentence before the chart regarding "YOUR LEGAL RIGHTS AND OPTIONS." Doc. No. 24-2 at 3. Second, the following sentence from the chart should be deleted to prevent an inference that the

---

[3] If the recommendation is followed, the purported class may consist of less than twenty people. Plaintiff asserts that approximately seven Sales Coordinators worked in the Orlando location during the past three years, and Opt-In Plaintiff Celaya estimates that there are three Sales Coordinators at the Daytona Beach location at any one time. Doc. No. 24-1 at 3, 9.

Court is supporting the litigation: "By opting in you also conserve judicial resources." *Id.* Third, footnote one regarding retaliation should be deleted from the notice. Plaintiff has not asserted a retaliation claim under the FLSA. Doc. No. 1. Defendant's argument that the notice should inform the potential class members that they have the right to retain their own counsel is rejected. The case Defendant relies on in support did not include this provision in the notice. *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1285 (S.D. Fla. 2012) (noting defendant's objection that notice did not contain such a provision, but tracking language in notice in *Bell v. Mynt Entm't, LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004), that also did not contain this provision).

Finally, Plaintiff argues that a reminder ensures that potential class members know their rights and when to exercise them and "strike[s] the appropriate balance of the FLSA's remedial purpose and notice provision with the perceived potential harm of sending the reminder notice." Doc. No. 24 at 16-17. Defendant argues that a reminder is inappropriate. Doc. No. 25. Plaintiff fails to demonstrate the necessity of a reminder. *See generally Palma v. MetroPCS Wireless, Inc.*, No. 8:13-CV-698-T-33MAP, 2014 WL 235478, at *3 (M.D. Fla. Jan. 22, 2014) ("Sending a putative class member notice of this action is informative; sending them a 'reminder' is redundant.").

### III.   CONCLUSION.

Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 24) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. That the Court conditionally certify the following class: all Employees of Defendant who worked at the Orlando or Daytona Beach locations and (1) are or were employed by

Defendant as "Sales Coordinators" during the preceding three years; (2) were classified as exempt from the FLSA; and (3) worked more than forty hours in a work week without being paid proper overtime compensation;

2. That Plaintiff's counsel be appointed as class counsel;

3. That Defendant be directed to provide Plaintiff with the names, job titles, dates of employment, last known addresses, telephone numbers, and email addresses for each individual in the class within ten days of the Court's order on the Motion;

4. That Plaintiff send a notice to members of the class in the form provided in Doc. No. 24-2, with the following revisions:

    a. Replace the word "misclassified" in the class description with "classified;"

    b. Delete "unlawfully" and "proper" from the penultimate sentence before the chart regarding "YOUR LEGAL RIGHTS AND OPTIONS;"

    c. Delete the following sentence from the chart: "By opting in you also conserve judicial resources[;]" and

    d. Delete footnote one from the notice; and

5. That in all other respects, the Motion be **DENIED**.

## NOTICE TO PARTIES

The parties have fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal

conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

      **RECOMMENDED** in Orlando, Florida, on March 16, 2018.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record
Unrepresented Parties