UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:17-cv-1574-Orl-41GJK

JAY E. REESE, individually and on
behalf of all those similarly situated,

Plaintiff,

vs.

FLORIDA BC HOLDINGS, LLC d/b/a SYNERGY
EQUIPMENT,

Defendant.

_____/

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW

Plaintiff, JAY E. REESE, ("Mr. Reese"), individually and on behalf of all those similarly situated, (collectively Mr. Reese), pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Middle District of Florida Local Rule 3.01(a), and the Court's Case Management and Scheduling Order at H.1., hereby submits his Motion for Partial Summary Judgment seeking judgment on Defendant's[1] First Affirmative Defense, Defendant's Second Affirmative Defense, Defendant's Eighth Affirmative Defense, Defendant's Ninth Affirmative Defense, Defendant's Invocation of the Fluctuating Workweek, Defendant's Record Keeping Violations, and the Sales Coordinator's prima facie case, and states as follows:

### I.     THE MATERIAL FACTS THE PLAINTIFF CONTENDS THERE IS NO GENUINE ISSUE FOR TRIAL

Synergy is covered by the Fair Labor Standards Act.  (*See e.g.* Doc. 5 at ¶ 13; *see also* Defendant's Response to Request for Admissions Nos. 1-7, Exhibit "A").  Mr. Reese and the other

---

[1] Defendant, FLORIDA BC HOLDINGS, LLC d/b/a SYNERGY EQUIPMENT, will be referred to as "Defendant" or "Synergy."

Sales Coordinators were employed by Synergy during all relevant times.  (*See e.g.* Doc. 5 at ¶ 7).

Synergy is in the business of renting, selling, and servicing construction equipment.  (Corp. Rep. Depo. at pg. 14; Line 1-8; pg. 53; Lines 1-16; Exhibit "B").  Sales Coordinators' duties are essential to the production operations of Synergy's business. (Sawyer Depo. at pg. 32-33, Lines 2-2; Exhibit "C").  Sales Coordinators were classified as exempt from the FLSA until November 2016 and did not received overtime.  (Corp. Rep. Depo. at pg. 42-43, Lines 23-20; Exhibit "B").  After November 2016, Synergy classified Sales Coordinator's as entitled to overtime pursuant to the FLSA and were paid overtime.

During the time Synergy classified Sales Coordinators as exempt from the FLSA it did not keep track of the hours they worked.  (Corp. Rep. Depo. at pg. 82; Lines 8- 12; Exhibit "B"; *see also* Defendant's Response to Plaintiff's Request for Admissions No. 9, 10; Exhibit "A").   During this time, Sales Coordinators were scheduled to work five days a week from 7:00am to 5:30pm. (*Sawyer* Depo. at 34; Lines 4-13, attached as Composite Exhibit "C").  They are asked to arrive between 6:30 and 6:45am and stay another half hour after the store location closes.  (*Id.*).  During this time, Sales Coordinators worked overtime. (*Id.*; Doc. 16 at ¶ (7)(e); Doc. 32 at ¶ (7)(e); Doc. 33 at ¶ (7)(e)).

Synergy is not relying on a written administrative interpretation by the Department of Labor's Administrator in classifying Sales Coordinators as exempt from the FLSA.  Rather, Synergy is relying on the advice of counsel.  (Defendant's Response to Interrogatory No. 16, attached as Exhibit "D"; Defendant's Responses to Plaintiff's Request for Production No. 21, attached as Exhibit "E").  Furthermore, there is no record evidence who provided the advice or what advice was given.  (Corp. Rep. Depo. at pg. 44; Lines 7-10; pg. 46; Lines 1-5; Exhibit "B"; Sawyer Depo. at pg. 47-49; Lines 11-3; Exhibit "C").

## II.     BURDEN OF PROOF ON SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The Plaintiff has the initial responsibility of stating for the court the grounds for the motion and of pointing out those portions of the pleadings or other filings which it feels show the nonexistence of any genuine issues of material facts. *See id.* at 323.

Because Mr. Reese is moving for summary judgment on Synergy's First Affirmative Defense, Second Affirmative Defense, Eight Affirmative Defense, Ninth Affirmative Defense, Synergy's invocation of the fluctuating workweek method of calculating overtime, and Synergy's violation of its record keeping duty, to discharge his burden, the Eleventh Circuit has stated Mr. Reese:

> …is not required to support [his] motion with affidavits or other similar material negating the opponents claim in order to discharge this initial responsibility. Instead, the moving party simply may – that is, point out to the district court – that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case.

*Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993)(citations and quotations omitted).

Once Mr. Reese points out an absence of evidence to support Synergy's case or provides affirmative evidence that Synergy cannot prove its case, the burden shifts to Synergy to demonstrate there is an existence of a genuine issue of fact. *Id.* at 1116.  On the issue that Sales Coordinator's bear the burden at trial, Mr. Reese must come forward with affirmative evidence establishing that there is no genuine issue of material fact.

III.   **ARGUMENT**

A.   **THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT SALES COORDINATORS' PRIMARY DUTY   IS NOT DIRECTLY RELATED TO THE MANAGEMENT OR GENERAL BUSINESS OPERATION OF SYNERGY SO THAT SUMMARY JUDGMENT MUST BE ENTERED ON SYNERGY'S FIRST AFFIRMATIVE DEFENSE.**

Synergy is claiming the administrative exemption pursuant to 29 U.S.C. § 213(a)(1) in its First Affirmative Defense.  (Doc. 5 at 7; *see also* Interrogatory Response 14, Exhibit "D").   To establish this defense, Synergy must demonstrate by clear and affirmative evidence that Sales Coordinators meet the "fair" and "ordinary meaning" of the elements of the administrative exemption.  *See Birdwell v. Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992)(Defendant "must prove applicability of an exemption by clear and affirmative evidence."); *Klinedinst v. Swift Inc., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001)(employer "bears the burden of proving the applicability of a FLSA exemption by clear and affirmative evidence."); *Encino Motorcars, LLC v. Navarro,* 138 S. Ct. 1134, 1142 (2018)(interpreting FLSA by giving its terms fair and ordinary meaning).  To do this, Synergy must produce clear and affirmative evidence that Sales Coordinators: (1) were paid a salary of $455.00 per week; (2) their primary work duty is the performance of office or non-manual work directly related to the management or general business operation of Synergy; and (3) their primary duties include the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200(a).  In this Motion, Mr. Reese will only challenge the second element of the exemption because Synergy does not have clear and affirmative evidence that Sales Coordinators meet this element.

A "primary duty" is "directly related to the management or general business operation" when the employee is performing "work directly related to assisting with the running or servicing of the business as distinguished, for example, from working on a manufacturing line or selling a

4

product in a retail or service establishment." 29 C.F.R. § 541.201(a). Thus, the administrative exemption is "limited to those employees whose primary duty relates 'to the administrative as distinguished from the production operations of a business.'" 69 Fed. Reg. 22122, 22141 (April 23, 2004), quoting the 1949 Weiss Report. In other words, "it relates to employees whose work involves servicing the business itself – employees who 'can be described as staff rather than line employees.'" *Id.,* quoting the 1940 Stein Report. This "production versus administrative" dichotomy is intended to distinguish "between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself.'" *Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1127 (9th Cir. 2002)(quotations omitted); *see Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529, 535 (2nd Cir. 2009) ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business. "); *Dalheim v. KDFW-TV,* 918 F.2d 1220, 1230 (5th Cir. 1990) (the dichotomy distinguishes between "those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market"); Wage and Hour Opinion Letter FLSA2005-21 (Aug. 19, 2005) (same). Thus, the dichotomy is "a relevant and useful tool in appropriate cases to identify employees who should be excluded from the exemption." 69 Fed. Reg. at 22141. Moreover, the dichotomy is "determinative if the work 'falls squarely on the production side of the line.'" *Id.*, *quoting Bothell v. Phase Metrics, Inc.,* 299 F.3d at 1127; *see* Wage and Hour Opinion Letter FLSA2006-45 (Dec. 21, 2006) (copy editors working for a marketing firm that promotes the sale of books, who read and correct the firm's marketing promotional materials, fall squarely on the production side of the line and, therefore, are not

exempt); Wage and Hour Opinion Letter FLSA2005-21 (Aug.19, 2005) (background investigators working for a company that contracts with the government to conduct security clearance investigations of potential government employees perform the day-to-day production work of their employer and, therefore, are not exempt).

Synergy is in the business of renting, selling, and servicing construction equipment. (Corp. Rep. Depo. at pg. 14; Line 1-8; pg. 53; Lines 1-16; Exhibit "B"); (*See also* Exhibit "H" (pictures of Synergy's yard)). It does this through seventeen store locations in Florida, Georgia, and, South Carolina. (Corp. Rep. Depo. at pg. 12; Lines 21-23; pg. 13; Lines 1-2; Exhibit "B"). At each location there are sales coordinators, sales representatives, service technicians, and parts representatives. (Corp. Rep. Depo. at pg. 15; Lines 12-16; Exhibit "B"). Each location also has a Branch Manager. (*Id*.) The typical employee structure at each location is:



(Corp. Rep. Depo. at pg. 16; Lines 3-14; Exhibit "B"). Synergy also has administrative departments. These departments include accounting, credit, accounts payable, human resources, and information technology. (Corp. Rep. Depo. at 12; Lines 11-15; Exhibit "B"; *see also* Reese Depo. at pg. 50; Lines 21-25; pg. 51; Lines 22-25, pg. 52; Lines 1-4; Exhibit "F").

Sales Coordinators rent equipment and obtain rental contracts. (Thompson Depo. at pg. 17; Lines 16-21; Exhibit "G"). Sales Coordinators rent and sell construction equipment to Synergy's customers that physically come into the location or call directly into the location. (*See. e.g.* Corp. Rep. Depo. at 86-87, Exhibit "B"; Reese Depo. at 40; Lines 11-25; pg. 41; Lines 1-17;

---

[2] Some stores have an Operations Manager that is directly below the Branch Manager.

pg. 42; Lines 10-25; Exhibit "F"; *see also* Sawyer Depo. at 23; Lines 16-21; Exhibit "C");(*See also* Exhibit "I" (pictures of Sales Coordinators work station). Sales Coordinators would seek to rent to prospective customers that have not done business with Synergy before or inactive customers that have not rented from Synergy in ninety days.  (Thompson Depo. at pg. 18; Lines 3-16; Exhibit "G").  Sales Coordinators are also responsible for preparing the contracts for all the rentals and sales. (Reese Depo. at pg. 31; Lines 19-24; Exhibit "F").[3] They are also responsible for ensuring the delivery of the rented equipment to include all paperwork being completed for the equipment being delivered. (Reese Depo. at pg. 35; Line 24-25; pg. 36; Lines 1-11; pg. 37; Lines 11-17; Exhibit "F"). Sales Coordinators were also responsible for rearranging the yard, moving the machines around and cleaning-up the yard.  (Reese Depo. at pg. 80; Lines 14-19; Exhibit "F"); (*See* Exhibit "J" (Picture of yard)).  Sales Coordinators were required to inspect the equipment before it was rented.  (Reese Depo. at pg. 80; Lines 20-24; Exhibit "F").  They are also responsible for inspecting the equipment upon return. (Reese Depo. at pg. 43; Lines 7-13; Exhibit "F").

Sales Coordinators receive commissions on rental revenue of the branch.  (Corp. Rep. Depo. at pg. 60; Lines 22-24; pg. 61; Lines 12-15; pg. 63; Lines 5-22; Exhibit "B").   Sales Coordinators are the only employees that receive commissions from this rental revenue. (Corp. Rep. Depo. at pg. 63; Lines 5-22; Exhibit "B").   Conversely, the individual outside Sales Representatives receive commissions based on what they specifically rent themselves. (Corp. Rep. Depo. at pg. 64; Lines 1-5; Exhibit "B").

Sales Coordinators' primary duty is producing the services that Synergy exists to produce and market- i.e. rent, sell and service construction equipment.  *See e.g. Christenberry v. Rental*

---

[3] Sales Representatives would provide the details of the contracts to the Sales Coordinators who would print them out.  (Reese Depo. at pg. 35; Lines 14-17; Exhibit "F")

*Tools, Inc.,* 655 F.Supp. 374, 377 (E.D. La. 1987)(Rental equipment company's inventory clerk/relief dispatcher not administratively exempt because the testimony at trial demonstrated the primary duties did not consist of work directly related to management policies or general business operations); *Gottlieb v. Constr. Servs. & Consultant, Inc.,* Case No.: 05-14139-civ-Graham, 2006 WL 5503644, 2006 U.S. Dist. LEXIS 97446 *11 (S.D. Fla July 21, 2006) (A project supervisor whose primary duty was to schedule subcontractors, scheduling supplies and filling out required forms such as concrete and masonry reports and to inspect the work of subcontractors was involved in producing of the product of the employer- constructing the shells of houses); *Sack v. Miami Helicopter Serv. Inc.,* 986 F.Supp. 1456, 1470-71 (S.D. Fla. 1997) (employee's duties of opening work orders, planning repair work, ordering required materials, directing mechanics as to what work to perform, determining whether certain parts complied with F.A.A. standards, and directing repair or replacement of parts that failed inspection were an integral part of the helicopter repair business and therefore not directly related to the management or general business operations). Sales Coordinators do not perform work related to assisting with the running or servicing of a business. Such work includes:

> tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).   Sales Coordinators did not perform any of these functions.  In fact, Synergy has specific departments at its corporate headquarters that handle these types of administrative areas.  (Corp. Rep. Depo. at 12; Lines 11-15; Exhibit "B"; *see also* Reese Depo. at pg. 50; Lines 21-25; pg. 51; Lines 22-25, pg. 52; Lines 1-4; Exhibit "F"). There is also a branch administrator that handles the processing of paperwork and human resources questions.

(Thompson Depo. at pg. 11; Lines 10-19; Exhibit "G").  WHEREFORE, the Plaintiff requests that this Court enter an order granting summary judgment in favor of the Sales Coordinators and against Synergy on its First Affirmative Defense.

**B.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT SYNERGY IS NOT A RETAIL OR SERVICE ESTABLISHMENT AND THAT IT CANNOT ESTABLISH BY CLEAR AND AFFIRMATIVE EVIDENCE  THAT SALES COORDINATORS RECEIVED TIME-AND-A-HALF OF MINIMUM WAGE SO THAT SUMMARY JUDGMENT MUST BE ENTERED ON SYNERGY'S SECOND AFFIRMATIVE DEFENSE.**

Synergy is claiming the retail or service establishment exemption pursuant to 29 U.S.C § 207(i) ("7(i)"). (Doc. 5 at 7; *see also* Interrogatory Response 15, Exhibit "D").  To establish this defense, Synergy must demonstrate by clear and affirmative evidence that it meets the "fair" and "ordinary meaning" of the elements of the exemption.  *See Birdwell,* 970 F.2d at 805; *Klinedinst*, 260 F.3d at 1254; *Encino Motorcars, LLC.,* 138 S. Ct. at 1142.  To establish the 7(i) exemption, Synergy must produce clear and affirmative evidence that (1) it is a retail or service establishment; (2) that Sales Coordinators "regular rate of pay" was in excess of one and one half times the minimum wage; and (3) more than half of Sales Coordinators' compensation represents commissions on goods or services.  *See* 29 U.S.C. 207(i); *Klinedinst,* 260 F.3d at 1254, n.2.  Mr. Reese's argument in this Motion will focus on elements one and two.

**1.  <u>Synergy Is Not A Retail Or Service Establishment</u>**

To establish the first element ("retail or service establishment" requirement) in relevant part, Synergy must produce clear and affirmative evidence that it is recognized as retail sale or service establishment.  A "retail or service establishment is one which sells goods or services to the general public." 29 C.F.R. § 779.318(a). A retail or service establishment "provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living." *Id*. This is sometimes referred to as having a "retail concept." 29 C.F.R.

§ 779.316 ("the term 'retail or service establishment' as used in the Act does not encompass establishments in industries lacking a "retail concept."). Establishments engaged in selling or servicing construction, mining, manufacturing and industrial machinery, equipment and tools lack a retail concept.  29 C.F.R. § 779.317 ("establishments engaged in selling or servicing construction … equipment and tools" lacks retail concept).  This is because such establishments do not provide services to the general public to meet their personal needs but rather to commercial and industrial users.

It is uncontested that Synergy is in the business of selling, renting, and servicing construction equipment.  (S*ee* Corp. Rep. Depo. at pg. 14; Line 1-8; pg. 53; Lines 1-16; Exhibit "B"). While Synergy can rent to the general consuming public, it rents 95% to contractors.  (*See* Corp. Rep. Depo. at pg. 37, 38; Line 14-1; Exhibit "B"). Contractors are qualified to rent and use the construction equipment being rented. (*See* Corp. Rep. Depo. at pg. 54; Line 9-20; Exhibit "B"). As such, Synergy is not "a retail or service establishment … which sells goods or services to the general public."  29 C.F.R. 779.318(a); *see also McKenzie v. Lindstrom Air Conditioning, Inc*., 08-cv-61378-Gold-McAliley,   2009  U.S.  Dist.  LEXIS  139086  *9  (S.D.  Fla.  Sept.  3, 2009)(Granting summary judgment against employer relying in part on29 C.F.R. § 779.317 because air conditioning contractor lacked retail concept); *Davidson v. Orange Lake Country Club, Inc.,* 2008 U.S. Dist. LEXIS *16-17 (M.D. Fla. Jan. 29, 2008)(holding that timeshare companies are "real estate companies" as listed in 29 C.F.R. § 779.317 lacking retail concept).

2.   **Synergy Has Not Establish By Clear And Affirmative Evidence That Sales Coordinators Received Time-And-A-Half Of Minimum Wage For All Hours Worked**

To establish the second element ("minimum wage requirement"), the regular rate of pay is calculated on a weekly basis.  *See* 29 C.F.R. § 779.419(b); *Selz v. Investools, Inc.*, 2011 WL

285801, 2011 U.S. Dist. LEXIS 9364 *27 (D. Utah Jan. 27, 2011)(For the 7(i) exemption, "[t]he regulations clearly state that the minimum wage requirement is to be calculated on a weekly basis…."); *Owopetu v. Nationwide CATV Auditing Serv.*, 2011 WL 883703, 2011 U.S. Dist. LEXIS 24948 *30 (D. Vt. March 11, 2011); *Viciedo v. New Horizons Computer Learning Center of Columbus, LTD.,* 246 F.Supp.2d 886, 895-96 (S.D. Oh. 2003).  As such, to establish the minimum wage requirement, Synergy must first produce clear and affirmative evidence of the amount of hours Sales Coordinators worked in each and every workweek.  *See* 29 C.F.R. § 779.419(b)("The employee's 'regular rate' of pay must be computed … on the basis of his hours of work in a particular workweek….").  Then, Synergy must come forward with clear and affirmative evidence of Sales Coordinators' compensation attributable to such hours.  *Id.* ("The employee's 'regular rate' of pay must be computed … on the basis of the employee's compensation attributable to such hours").  Once the foregoing is produced by Synergy, the straight-time earnings attributable to the workweek are divided by the hours worked in that workweek to determine whether Sales Coordinators received at least one and one half times the minimum wage for each hour worked. 29 C.F.R. § 779.419(b); *Owopetu*, 2011 U.S. Dist. LEXIS 24948 *30.

If Synergy cannot produce clear and affirmative evidence of the hours worked by Sales Coordinators for a given workweek in order to establish that their regular rate of pay exceeded one half times the minimum wage, Synergy loses the exemption for that workweek.  29 C.F.R. § 779.419(a)(recognizing that if the regular rate of pay is not more than one and one-half times the minimum wage for a given workweek, there is no overtime pay exemption for the employee in that particular workweek.).  In order to ensure the ability to determine whether an employee of an entity claiming the 7(i) exemption is receiving at least one and one half times the minimum wage for each hour worked in a given workweek, the Department of Labor requires the employer to

maintain a record of all hours worked in each workday and the total hours worked each workweek. 29 C.F.R. § 516.16(b); 29 C.F.R. § 516.2(a)(7).

The record is completely devoid of evidence that clearly and affirmatively establishes the hours worked by Sales Coordinators for each workday and each workweek. To the contrary, the record establishes that Synergy clearly and affirmatively failed to keep track of the time worked by Sales Coordinators. Prior to November 2016, when Synergy classified Sales Coordinators as exempt, Synergy failed to keep track of the hours worked by the Sales Coordinators even though it was required to do so pursuant to 29 C.F.R. § 516.16(b) and 29 C.F.R. § 516.2(a)(7) for the 207(i) exemption. (Corp. Rep. Depo. at pg. 82; Lines 8- 12; Exhibit "B"; *see also* Defendant's Response to Plaintiff's Request for Admissions No. 9, 10; Exhibit "A").

Synergy may attempt to rely on the record evidence of Sales Coordinators' estimations and approximations of their overtime hours reported in their Court Interrogatories, Rule 26 disclosures or deposition testimony to establish the minimum wage requirement of the 7(i) exemption. (Doc. 32 at ¶ 7; 33 at¶ 7). Such an argument would be improper.

Plaintiff's burden of proof on hi*s prima facie* case is "minimal." *Moon v. Technodent Nat., Inc*., 2008 WL 2117053, 2008 U.S. Dist. LEXIS 40423 (M.D. Fla. May 19, 2008). Plaintiff's estimation and approximation of the overtime hours worked, while not perfectly accurate and not clear and affirmative, are sufficient to award back pay when the employer fails to record the employee's time. *Id*. (*citing Doo Nam Yang v. ACBL.*, 427 F.Supp.2d 327, 336 (S.D.N.Y. 2005); *Turner v. Human Genome Science*, Inc., 292 F.Supp.2d 738, 748 (D.Md. 2003)); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1267 (11th Cir 2008)(recognizing that Plaintiff's damages can be based on "approximations" and "estimates" when Defendant has failed to maintain payroll records); *Donovan v. Hamm's Drive Inn*, 661 F.2d 316 (5th Cir.

1981)(approving award based on employee testimony that groups of employees averaged certain number of hours per week and on calculations from that testimony); *Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 471-72 (11th Cir. 1982).[4]   Conversely, to prove the minimum wage requirement of the 7(i) exemption, Synergy cannot rely on "approximations" or "estimations." Rather, it must produce clear and affirmative evidence as to the hours worked by Sales Coordinators each workweek.  Thus, relying on Sales Coordinators' "approximations" would be insufficient.   There is no genuine issue of material fact that the record is devoid of clear and affirmative evidence of the hours worked by Sales Coordinators each workweek.

Furthermore, to allow Synergy to rely on the Sales Coordinators' approximations and estimations of the amount of overtime hours worked to meet its burden of proof would produce a windfall for Synergy for failing to maintain the appropriate time records.  Synergy is required to maintain records of all hours worked by Sales Coordinators in each workday and the total hours worked by Sales Coordinators each workweek.  29 C.F.R. § 516.16; 29 C.F.R. § 516.2(a)(7). Because Synergy has failed to maintain the appropriate records, Sales Coordinators can prove their case with approximations and estimates.  This decreased burden of proof ("reasonable and just inference") is granted to Sales Coordinators as a result of Synergy's violation of the recordkeeping requirements of the Act.  To then allow Synergy to prove the minimum wage requirement of its affirmative defense by utilizing Sales Coordinators' approximations and estimates would in essence provide Synergy with a decreased burden of proof on its affirmative defense.  Such an

---

[4] On Plaintiffs' *prima facie* case, once the burden shifts, the Defendant must come forward with evidence of the precise amount of hours worked or with evidence to negate the reasonableness of the inference to be drawn from Plaintiff's evidence.  *Donovan*., 676 F.2d at 471; *Arian v. Double R. Remodeling, Inc.*, 2010 WL 1252179, 2010 U.S. Dist. LEXIS (M.D. Fla. March 5, 2010). Defendant's burden on the second element of its affirmative defense is the same as if trying to negate Plaintiff's *prima facie* case by coming forward with clear and affirmative evidence of the precise amount of hours worked.

allowance would frustrate the furtherance of the Act. Surely the law cannot be set-up so that by failing to maintain the records required by the act, Synergy receives the benefit of such failure- the lower burden of proof on the second element of its affirmative defense. *See e.g. Johnson v. Wave Comm. GR., LLC.*, 4 F.Supp.3d 423, 445 (N.D.N.Y. 2014)(Court rejected employer's use of Plaintiff's "estimated hours worked provided by plaintiffs in interrogatories" to establish the time-and-a-half minimum wage element of 207(i)); *see also Tillis v. South Floor Covering, Inc.*, 2018 WL 4571924, 2018 U.S. Dist. LEXIS 162608 *25 (S.D. Miss. Sept. 24, 2018)(Court rejected employers argument that summary judgment on the time-and-a-half minimum wage issue should be denied and submit issue to the jury because the jury would have to conclude hours worked by employees per week for their damages.). WHEREFORE, the Plaintiff requests that this Court enter an order granting summary judgment in favor of the Sales Coordinators and against Synergy on its Second Affirmative Defense.

**C.**  **THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT SYNERGY CANNOT PROVE IT ACTED IN GOOD FAITH AND HAD A REASONABLE BELIEF THAT IT WAS IN COMPLIANCE WITH THE FLSA SO THAT SALES COORDINATORS ARE ENTILED TO JUDGMENT AS A MATTER OF LAW ON SYNERGY'S EIGHTH AND NINTH AFFIRMATIVE DEFENSES**

There is presently no record evidence that Synergy acted in good faith and had a reasonable belief that they were in compliance with the FLSA. As such, under the holding of *Fitzpatrick*, 2 F.3d at 1112, Plaintiff is entitled to final summary judgment on Synergy's Eighth and Ninth Defenses. (Doc. 5 at 8).

**1.**  **There is no record evidence establishing the Defendants have a defense under Section 10 of the Portal-to-Portal Act**

To establish a good faith defense under section10 of the Portal-to-Portal Act, Synergy has the burden of proving a three factor test requiring that "the act or omission complained of was (1) taken in good faith and was (2) in conformity with and (3) in reliance on a written administrative

interpretation by a designated agency." *Cole v. Fresh Farm Poultry, Inc.*, 824 F.2d 923, 926 (11th Cir, 1987); *see also* 29 U.S.C. § 259. The law is clear that the section 259 good faith defense requires reliance on a written administrative statement, *Nelson v. Ala. Institute for Deaf & Blind*, 896 F. Supp. 1108, 1114 (N.D. Ala. 1995), and for an employer to rely upon an administrative interpretation, that interpretation "must provide a clear answer to the particular situation. . . . " *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 928 (11th Cir. 1987). "The agency designated to provide interpretations of the FLSA is the Administrator of the Wage and Hour Division of the Department of Labor." *Id.* at 926; *see also* 29 U.S.C. § 259(b)(1). Further, "in the case of the FLSA, the Administrator must provide the written administrative interpretation in order to qualify for relief under section 259." *Cole*, 824 F.2d at 930. Thus, on the third *Cole* element, Courts have concluded that an interpretation by an employer's attorney does not satisfy the test and neither does a Department of Labor's Investigator's correspondence. *See e.g. Cusamano v. Maquipan Int'l, Inc.*, 390 F.Supp.2d 1216, 1221-22 (M.D. Fla. 2005)(Court granted summary judgement for employee and rejected the employer's reliance on a letter written by its counsel to the Department of Labor and a purported response from a Wage and Hour investigator); *Dean v. 1715 Northside Drive, Inc.*, 224 F.Supp.2d 1302, 1312-13 (M.D. Fla. 2016)(Court granted summary judgment for employee and rejected the employer's reliance on a letter sent by Wage and Hour investigator.).

To date there has been no evidence, whether testimonial or documentary, that establishes any of the *Cole* elements cited above. In fact, in its Request for Production, the Plaintiff requested "[a]ny and all U.S. Department of Labor administrative interpretations that Defendant is relying upon in this action."  (*See* Defendant's Responses to Plaintiff's Request for Production No. 21; attached as Exhibit "E"). In its response, Synergy stated it "relies upon legal advice from its attorney with respect to the issues raised in this litigation."  Synergy did not provide and has not

identified any formal statement issued by the Administrator, but rather has continuously stated it is relying upon its attorneys. (*Id*.; *see also* Defendant's Answer to Plaintiff's Interrogatory No. 16; Exhibit "D"). WHEREFORE, the Plaintiff requests that this Court enter an order granting summary judgment in favor of the Sales Coordinators and against Synergy on its § 259 defense.

2.   **There is no record evidence establishing the Defendants have a defense under Section 11 of the Portal-to-Portal Act**

Under Section 11 of the Portal-to-Portal Act allows the judge, upon proper finding that the defense is present, to exercise discretion to eliminate or reduce the employer's liability for liquidated damages. In order to merit consideration of a discretionary reduction of liquidated damages by the judge, an employer must prove: (1) that its act or failure to act was in good faith, and (2) that it had reasonable grounds for believing that its act or omission did not violate the FLSA. *See* 29 U.S.C.A. § 260. Under section 11, Synergy bears the "plain and substantial" burden of proving to the court that it acted both reasonably and in good faith in classifying its Sales Coordinators as exempt from the FLSA in order to obtain a reduction or elimination of liquidated damages under the Act. *See e.g., Rock v. Wilamosky*, 833 F.2d 11, 19 (2nd Cir. 1987). The employer's burden is heavy and difficult to meet- double damages are the norm, single damages the exception. *See Reich v. Newspapers of New England*, 834 F.Supp 530, 542 (D.N.H. 1993).

Synergy's basis for its § 259 is the same basis for its § 260 defense- "Defendant's executive team classified Sales Coordinators as exempt based on the advice of counsel."  (*See* Defendant's Answer to Plaintiff's Interrogatory No. 16; Exhibit "D").  This basis is insufficient to establish the § 260 defense because the record evidence to date is devoid of: (1) who actually is "Defendant's executive team"; (2) what "advice" was given; and (3) who was "counsel" that provided the advice. Synergy's Corporate Representative testified he did not know why Synergy classified the Sales Coordinators as exempt.  (Corp. Rep. Depo. at pg. 44; Lines 7-10; Exhibit "B").  At best, the

Corporate Representative testified he would be "guessing by saying [Synergy's] former CEO" made the decision. (*Id.* at pg. 45; Lines 20-21; Exhibit "B"). The Corporate Representative did not know what steps were taken by Synergy to render the decision. (*Id.* at pg. 46; Lines 1-5; Exhibit "B"). The Corporate Representative was not sure who "counsel" was that provided Synergy the "advice." (*Id.* at pg. 111-12; Lines 20-2; Exhibit "B"). When Mr. Reese asked Mr. Sawyer, the individual that executed under oath Defendant's Answer to Plaintiff's Interrogatory, he could not identify Synergy's "Executive Team" or who the counsel was that provide the advice. (Sawyer Depo. at pg. 47-49; Lines 11-3; Exhibit "C"). There is a complete lack of record evidence supporting Synergy's basis for its § 260 defense. WHEREFORE, Plaintiff requests that this Court enter an order granting summary judgment in favor of the Sales Coordinators and against Synergy on its § 260 defense.

**D.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT SYNERGY IS NOT ENTITLED TO INVOKE THE FLUCTUATING WORK WEEK METHOD OF CALCULATING SALES COORDINATORS' OVERTIME**

In November 2016, Synergy entered into agreements with Sales Coordinators by which they agreed that Sales Coordinators would be paid overtime by the fluctuating work week ("FWW") method. (*See e.g.* Exhibit "K"; Corp. Rep. Depo. at pg. 113-14; Lines 15-7; Exhibit "B"). Prior to this time, Synergy did not implement the fluctuating work week method with Sale Coordinators. (Corp. Rep. Depo. at pg. 114; Lines 5-7; Exhibit "B"). Thus, the record evidence demonstrates that Synergy cannot invoke the FWW method of calculating overtime prior to November 2016 which is the time period of the Sales Coordinators misclassification claims.

To apply the fluctuating work week method ("FWW") of calculating overtime the following must be demonstrated: (1) Sales Coordinators' hours fluctuated from week to week; (2) employees received a fixed weekly salary regardless of hours worked during the week; (3) the

fixed rate is sufficient to provide compensation at a rate not less than the legal minimum wage; (4) the Sales Coordinators and Synergy had a clear mutual understanding that the Synergy will pay the Sales Coordinators a fixed salary regardless of the number of hours worked; and (5) the employee receives a fifty percent overtime premium in addition to the fixed salary for all hours worked in excess of forty (40) during the week.  29 C.F.R. 778.114.   There is no genuine issue of material fact that: (1) Sales Coordinator's hours were not meant to fluctuate; (2) Synergy and Sales Coordinators did not have a mutual understanding that Synergy will pay the Sales Coordinators a fixed salary regardless of the number of hours worked during the claim period and (3) Sales Coordinators did not receive a fifty percent overtime premium in addition to the fixed salary for all hours worked in excess of forty (40) during the week during the claim period.

The retroactive application of the FWW in a failed exemption case is an open question of law in the Eleventh Circuit.  While the Eleventh Circuit has not addressed the issue, District Courts in the Eleventh Circuit that have addressed the issue have come to opposite conclusions.   *See e.g. Spires v. Ben Hill County*, 745 F.Supp. 690, 703 (M.D. Ga. 1990)(Court determined on Summary Judgment that FWW not applied in a misclassification case); *accord Scott v. OTS, Inc.*, Case No.: 1:02-cv-1950-AJB, 2006 U.S. Dist. LEXIS 15014 (N.D. Ga. March 31, 2006); *Ziegler v. Tower Cmtys., Co.*, 2015 WL 1208643, 2015 U.S. Dist. LEXIS 32484 *55-64 (N.D. Ala. March 17, 2015);[5] *but see English v. Pharmerica Drug Syst.*, 2004 U.S. Dist. LEXIS 29900 *13-14 (M.D.

---

[5]Many District Courts throughout the country have likewise declined to apply the FWW retroactively in a misclassification case.  *See e.g. Monahan v. Emerald Performance Materials, LLC*, 705 F. Supp. 2d 1206, 1217 (W.D. Wash. 2010) (the FWW "method cannot be used to calculate overtime retroactively (where it has not been paid contemporaneously with the overtime work for the purposes of determining damages under Washington State law."); *Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1014 (N.D. Cal. 2009) ("when an employee is erroneously classified as exempt and illegally not being paid overtime, neither of th[e] legal prerequisites for use of the FWW method is satisfied"); *Rainey v. American Forest and Paper Ass'n, Inc.*, 26 F.Supp.2d 82 (D. D. C.1998)("If the parties had originally agreed that plaintiff's compensation

Fla. Aug. 27, 2004); *Torres v. Bacardi Global Brands Promotions, Inc.*, 482 F.Supp.2d 1379, 1382

(S.D. Fla. 2007).[6]   Sales Coordinators would urge the Court to follow the well-reasoned decisions

that hold the FWW cannot be retroactively applied. The most persuasive reason for not allowing

the FWW to be applied retroactively is that to do so would require the Sales Coordinators to waive

their entitlement to overtime pay, which is illegal.  See e.g.  *See Hasan v. GPM Inv., LLC.*, 896

F.Supp.2d 145, 150 (D. Conn. 2012)("[S]uch an agreement would be illegal. An employee would

have to waive her statutory right to extra compensation for overtime.") (citing *Barrentine v.*

---

would be governed by the fluctuating workweek method, then defendant would have had to have conceded from the start that plaintiff was covered by" the overtime provisions of the FLSA.); *Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 149 (D. Conn. 2012) (finding that the FWW method of compensation is never appropriate in a case where an employer has misclassified an employee as exempt from the FLSA's protections); *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199, 206 (D. Conn. 2013)(in a misclassification case in which the employer believes that no overtime payments are ever due to the employee, it is simply logically impossible to meet the FWW requirements to have the kind of "clear, mutual understanding" involving the weekly wage rate and contemporaneous overtime premiums);  *Ransom v. M. Patel Enters., Inc.*, 825 F. Supp. 2d 799, 808 (W.D. Tex. 2011) (rejecting retroactive application of the FWW under § 778.114 and *Missel*); *McCoy v. N. Slope Borough*, No. 3:13-CV-00064-SLG, 2013 U.S. Dist. LEXIS 121797, 2013 WL 4510780 *19 (D. Alaska Aug. 26, 2013) ("This Court is persuaded by the reasoning of those district courts that have concluded that the FWW method should not be applied in a misclassification case, particularly in light of the FLSA's remedial purpose."); *Wallace v. Countrywide Home Loans Inc.*, No. SACV 08-1463-JST, 2013 U.S. Dist. LEXIS 69215, 2013 WL 1944458 *7 (C.D. Cal. Apr. 29, 2013) ("in the context of misclassification cases, the FWW method should not apply");  *Zulewski v. Hershey Co.*, Case No. CV 11B05117BKAW, 2013 U.S. Dist. LEXIS 23448, 2013 WL 633402 *6 (N.D. Cal. Feb. 20, 2013)("the retroactive application of the FWW method in the misclassification context does not square  with [*Missel*], because [*Missel*] requires an agreement between the parties that the fixed weekly salary was compensation for all straight time [and] such an agreement is not present in misclassification cases"); *Perkins v. S. New England Tel. Co.*, No. 3:07-CV-967 JCH, 2011 U.S. Dist. LEXIS 109882, 2011 WL 4460248 *4 (D. Conn. Sept. 27, 2011)("Although several circuits have applied section 778.114 in a misclassification case, the court does not find those decisions to be particularly persuasive, especially given the lack of analysis regarding the difference between applying the fluctuating workweek method prospectively—where both the employer and the employee have agreed regarding compensation—and retrospectively—when the employer has made a unilateral, and incorrect, decision that an employee is exempt from being paid overtime at all.").
[6] Other Courts within the Eleventh Circuit appear to have concluded that the issue is better suit for determination by the jury. *See e.g. Ramirez v. Urban Outfitters, Inc.*, 2014 WL 4090546 (M.D. Fla. Aug. 15, 2014); *Perez v. Garcia*, 2015 WL 5043086 (S.D. Fla. July 14, 2015).

*Arkansas-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981)); *Blotzer v. L-3 Corp.*, 2012 U.S. Dist. LEXIS 173126, 2012 WL 6086931 at * 12 (D. Arizona Dec. 6, 2012) ("[E]ven if Defendant could prove that Plaintiffs and Defendant had a clear, mutual understanding that Plaintiffs would work 50 hours a week without overtime pay, such an arrangement amounts to an agreement 'not to receive their FLSA entitlement to overtime pay. This would be illegal. Employees cannot agree to waive their right to overtime pay.'") (quoting *Russell v. Wells Fargo*, 672 F.Supp.2d 1008, 1014 (N.D. Cal. 2009); *Zulewski v. Hershey Co.*, 2013 U.S. Dist. LEXIS 23448, 2013 WL 633402 *5 (N.D. Cal. Feb. 20, 2013) ("If RSRs are found to be misclassified as exempt employees, the inquiry regarding whether individual RSRs consented to a FWW is improper because when employees are misclassified, they have unwittingly agreed to forego their entitlement to their overtime time — a right which cannot be legally waived."). Courts in the Eleventh Circuit have repeatedly stated that private agreements that limit FLSA rights are illegal. *See e.g. Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1349 (M.D. Fla. 2010)("A singular statute, the FLSA prohibits a private agreement altering an employee's right to minimum wage and overtime. For example, the employer and the employee may not agree for the employee to work prospectively for an overtime rate of one-and-a-quarter times the regular hourly rate….").[7]

Even if the Court does not conclude that the FWW method cannot be applied retroactively in a failed exemption case as a matter of law, the factual evidence in this case demonstrates it cannot be applied. *See also, Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 62 (D. D. C. 2006) (declining to address the specific issue of misclassification, but concluding that, under the circumstances presented by this case, it would be inappropriate retroactively to apply the FWW

---

[7] As this Court is intimately aware, even when an employer and employee enter into a private settlement agreement in a Court case that compromises FLSA rights, it is not valid unless approved by the Court.

method."). First, the evidence demonstrates that Sales Coordinators' hours were not meant to fluctuate. The Sales Coordinators are required to be at Synergy's location from 7:00am to 5:30pm. (*Sawyer* Depo. at 34; Lines 4-13; Exhibit "C"). They are asked to arrive between 6:30 and 6:45am and stay another half hour after the store location closes. (*Id.*). This type of arrangement is not the type of fluctuating hours to which the FWW applies. *See e.g. Ziegler*, 2015 U.S. Dist. LEXIS 32484 *61. Second, the evidence demonstrates that the agreement between the Sales Coordinators and Synergy was that they would work a fixed schedule arriving between 6:30am and 6:45am and staying until 7:30pm. Thus, the agreement was that the Sales Coordinators would receive their pay for working this schedule and not their pay "regardless of the number of hours worked." *See e.g. Cowan v. Treetop Enters.*, 163 F.Supp.2d 930, 940 (M.D. Ten. 2001)(Court refused to apply FWW where pay was meant to cover 53 hours per week and not all hours worked). This point is further supported by the evidence that it was not until November 2016 that the parties entered an agreement providing that the pay was meant to cover all hours worked. (*See e.g.* Exhibit "K"; Corp. Rep. Depo. at pg. 113-14; Lines 15-7; Exhibit "B"). Finally, it is uncontested that Synergy classified Sales Coordinators as exempt from the FLSA and did not pay the Sales Coordinators overtime prior to November 2016. (Defendant's Answer to Request for Admission No. 6; Exhibit "A" and Corp. Rep. Depo. at pg. 42-43; Lines 23-1; pg. 43; Lines 11-14; Exhibit "B"). Furthermore, it is uncontested that Synergy did not keep track of the time worked by Sales Coordinators prior to November 2016. (Corp. Rep. Depo. at pg. 26; Lines 16-19; Exhibit "B"). Thus, it is impossible for Synergy to have paid the Sales Coordinators a fifty percent overtime premium in addition to the fixed salary for all hours worked in excess of forty as required by the FWW. *Scott,* 2006 U.S. Dist. LEXIS 15014 at 38-39; *Ziegler*, 2015 U.S. Dist. LEXIS 32484 *60 ([Employer] cannot assert, on one hand, that it entered into an employment agreement with the

[Employees] that provides no overtime pay and then assert, on the other hand, that the agreement provided that any overtime would be paid at fluctuating rates."); c*ompare Meran v. Rank Trade Servs.*, 2017 U.S. Dist. LEXIS 66718 (S.D. Fla. April 28, 2018)(Summary judgment appropriate to employer where evidence demonstrates employees received half-time rate for all overtime worked). WHEREFORE, Plaintiff requests that this Court enter an order granting summary judgment in favor of the Sales Coordinators and against Synergy on measuring the overtime owed at time-and-one-half versus the halftime method of the FWW.

**E.     THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT SYNERGY'S TIME RECORDS ARE INADEQUATE AND INACCURATE SO THAT SALES COORDINATORS ARE ENTITLED TO PROVE THEIR DAMAGES BY A JUST AND REASONABLE INFERENCE**

As argued in Section B.2 above, it is uncontested Synergy has failed to maintain any time records let alone adequate time records. When an employer fails to maintain adequate time records then the just and reasonable inference burden of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) applies. *See Etienne v. Inter-County Serv., Corp.*, 173 F.3d 1372, 1376 (11th Cir. 1999)(*Anderson* applies when no records). When an employer completely fails to maintain the required records, the employer must "disprove" the employees' testimony that the FLSA was violated. *See Skipper v. Superior Diaries*, 521 F.2d 409, 420 (5th Cir. 1975). This must be done by a preponderance of the evidence. *Id*. WHEREFORE, Plaintiff requests that this Court enter an order granting summary judgment in favor of the Sales Coordinators and against Synergy that they can prove their damages at trial by a just and reasonable inference.

**F.     THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT SALES COORDINATORS WORKED OVERTIME HOURS FOR WHICH THEY WERE NOT PROPERLY PAID AND SYNERGY WAS AWARE OF IT**

The Sales Coordinators must demonstrate that they worked overtime without compensation and that Synergy knew or should have known of the overtime worked. *See e.g. Allen v. Bd. of Pub*

*Educ.*, 495 F.3d 1306, 1314 (11th Cir. 2007).  It is appropriate to grant Summary Judgment on these issue.  *Ziegler v. Tower Cmtys., Co.*, 2015 WL 1208643, 2015 U.S. Dist. LEXIS 32484 *41 (N.D. Ala. March 17, 2015); *Tillis v. South Florida Covering, Inc.*, 2018 WL 4571924, 2018 U.S. Dist. LEXIS 162608 *20-21 (S.D. Miss. Sept. 24, 2018).

It is undisputed that Synergy's store locations are open five days a week, Monday through Friday.  (Corp. Rep. Depo. at pg. 91; Lines 14-17; Exhibit "B").  It is also undisputed that Sales Coordinators work five days a week from 7:00am to 5:30pm.  (Sawyer Depo. at 34; Lines 4-13; Exhibit "C"). They are asked to arrive between 6:30 and 6:45am and stay another half hour after the store location closes.  (*Id.*).  It is further undisputed that the Sales Coordinators were expected to get their work done between 7:00am and 5:30pm.  (Sawyer Depo. at. pg. 35; Lines 1-4; Exhibit "C").  That provides a fifty-two and a half-hour (52.5) workweek.  (*Id.* at pg. 35; Lines 9-10). Finally, it is undisputed that Sales Coordinators were not paid overtime because they were classified as exempt from the FLSA. Thus, the issue for trial is not did the Sales Coordinators work overtime, but rather how much overtime.  *Ziegler*, 2015 U.S. Dist. LEXIS 32484 *47 (Court entered summary judgement that employees worked overtime for which they did not receive overtime, leaving open issue of amount of overtime).  WHEREFORE, Plaintiff requests that this Court enter an order granting summary judgment in favor of the Sales Coordinators and against Synergy on their prima facie case.  Thus, leaving open for trial the measurement of the Sales Coordinators' damages- i.e. how much overtime they worked without being paid.

## G.    CONCLUSION

WHEREFORE, based on the foregoing arguments, Mr. Reese respectfully requests that this Honorable Court enter judgment against the Defendant pursuant to the foregoing arguments and grant any other relief the court deems equitable and just under the facts and circumstances.

Respectfully submitted,

Dated:  December 21, 2019

/s/ Scott C. Adams
SCOTT C. ADAMS, ESQ.
Florida Bar No.: 0573442
sadams@labaradams.com
N. RYAN LABAR, ESQ.
Florida Bar No.: 0010535
rlabar@labaradams.com
LABAR & ADAMS, P.A.
2300 East Concord Street
Orlando, Florida 32803
(407) 835-8968 (phone)
(407) 835-8969 (facsimile)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I presented the foregoing to the Clerk of the court for filing and uploading to the CM/ECF system which will send a notice of electronic filing to the following: Rene M. Fix, Esq. Rogers Towers, P.A. at rfix@rtlaw.com and Kim Bouchard-Chaimowiz, Esq., Rogers Towers, P.A. at kbouchardc@rtlaw.com. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None, this 21st day of December 2018.

/s/ Scott C. Adams
SCOTT C. ADAMS, ESQ.