UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JAY E. REESE,**

        **Plaintiff,**

**v.**                                **Case No:  6:17-cv-1574-Orl-41GJK**

**FLORIDA BC HOLDINGS, LLC,**

        **Defendant.**

**AND**

**RONALD WARD,**

        **Plaintiff,**

**v.**                                **Case No:  6:18-cv-459-Orl-41GJK**

**FLORIDA BC HOLDINGS, LLC,**

        **Defendant.**

_____/

## ORDER

THIS CAUSE is before the Court on cross motions for summary judgment. Plaintiffs filed a Motion for Partial Summary Judgment ("Plaintiffs' MSJ," Doc. 82) to which Defendant filed a Response in Opposition (Doc. 89), and Plaintiffs filed a Reply (Doc. 90). Defendant also filed a Motion for Summary Judgment ("Defendant's MSJ," Doc. 84) to which Plaintiffs filed a Response in Opposition (Doc. 87), and Defendant filed a Reply (Doc. 92). Plaintiff Reese has also filed a Renewed Motion to Have the Final Judgment Include Punitive Damages ("Renewed Motion," Doc. 83), to which Defendant filed a Response in Opposition (Doc. 86). For the reasons stated herein, Plaintiffs' MSJ will be granted in part and denied in part, Defendant's MSJ will be denied, and Plaintiff's Renewed Motion will be granted.

# I.  BACKGROUND

## A.    FLSA Claims

This case arises from alleged violations by Defendant of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Defendant is a Limited Liability Company doing business as Synergy Equipment. (Sawyer Decl., Doc. 84-1, at 1). Defendant is in the business of "sell[ing], leas[ing], and servic[ing] construction equipment," (McPhail Dep., Doc. 82-3, at 6), and is generally subject to the FLSA, (Def.'s Resp. to Pls.' First Interrogs., Doc. 82-1, at 3). Defendant typically works with businesses, rather than individual consumers, and derives "at least 95 percent, if not more," of its sales, leases, and rentals from those business customers. (Doc. 82-3 at 10–11).

Plaintiffs worked as Sales Coordinators for Defendant. (Doc. 84-1 at 2). Named Plaintiffs in this action are Jay Reese ("Reese") and Ronald Ward ("Ward"). Reese originally filed this FLSA collective action in state court, and the case was removed here by Defendant. (Compl., Doc. 2, at 1; Notice of Removal, Doc. 1, at 1). In the *Reese* case, the Court conditionally certified the following class:

> All employees of Defendant who worked at the Orlando or Daytona Beach locations and (1) are or were employed by Defendant as "Sales Coordinators" during the preceding three years; (2) were classified as exempt from the FLSA; and (3) worked more than forty hours in a work week without being paid proper overtime compensation.

(Apr. 30, 2018 Order, Doc. 49, at 2). Ward originally filed his action against Defendant in *Ward v. Florida BC Holdings LLC*, No. 6:18-cv-459-Orl-41GJK. (*Ward*, Compl., Doc. 1, at 1). In the *Ward* case, the Court conditionally certified two classes:

> All Employees of [Defendant] who were: (1) employed by [Defendant] as Sales Coordinators during the preceding three years at any store other than the Orlando or Daytona Beach stores; (2) were classified as exempt from the FLSA; and (3) worked more than

forty hours in a work week without being paid proper overtime compensation.

All Employees of [Defendant] who: (1) are or were employed by [Defendant] as Sales Coordinators since November 2016; (2) worked more than forty hours in a work week; and (3) did not receive proper overtime because: (a) [Defendant] failed to include all weekly remuneration in Sales Coordinator's regular rate of pay when calculating the overtime rate and (b) failed to include all hours worked when calculating overtime.

(*Ward*, Feb. 20, 2019 Order, Doc. 43, at 1–2). Subsequently, the two cases were consolidated. (April 9, 2019 Order, Doc. 69, at 1). Throughout the litigation, thirteen additional Plaintiffs have opted-in to one or more of the three conditionally certified classes.

Reese was employed by Defendant as a Sales Coordinator from approximately September 2015 to December 2016. (Reese's Answers to Ct.'s Interrogs., Doc. 16-1, at 1). Ward was employed in the same capacity from approximately March 2016 to September 2017. (*Ward*, Doc. 26-1 at 1). All of the Opt-in Plaintiffs were also employed by Defendant as Sales Coordinators at various periods between 2015 and 2019. (Def.'s Resps. to Pls.' Req. for Admiss., Doc. 82-2, at 3–6 (admitting)).

The job description of a Sales Coordinator calls the position "a novice perspective into the equipment rental business" and list as the "principal duties":

- "support[ing] . . . the sales staff";
- documenting sales activity;
- "support[ing] . . . the sales and management employees";
- "[m]anag[ing] the receiving, organizing, locating and movement of equipment and attachments";
- "[m]aintain[ing] . . . inventory records";
- "[a]ssist[ing] customers"; and
- "[o]ther duties as assigned."

(Sales Coordinator Job Description, Doc. 25-2, at 1; Reese Dep., Doc. 82-8, at 3). Defendant describes the "tasks" performed by Sales Coordinators as "directing drivers, coordinating logistics

of deliveries, serving as a dispatcher, drafting contracts, managing deliveries and returns, inspecting equipment upon return, providing customer support, determining and adjusting rental pricing, and recommending equipment to customers." (Doc. 84-1 at 2; Doc. 82-8 at 3–10, 14). In terms of adjusting equipment rental pricing, Sales Coordinators had "some discretion in quoting rates to customers." (Doc. 82-8 at 8). Defendant describes this as "sole discretion within a certain range," based on a rate sheet. (Doc. 84-1 at 3).

Until November 2016, Defendant classified its Sales Coordinators as exempt pursuant to the FLSA and therefore did not pay them overtime. (Doc. 82-3 at 12–13). Defendant reclassified its Sales Coordinators as non-exempt in November 2016, at which time Defendant began implementing a "fluctuating workweek." (*Id.* at 25–26).

Named Plaintiffs stated in their answers to the Court's interrogatories that they received a salary of $25,000 annually, paid in weekly installments of $480.77. (Doc. 16-1 at 1; *Ward*, Doc. 26-1 at 1). Each Plaintiff was also paid an additional "guarantee" payment on a monthly basis, (*Ward*, Doc. 26-1 at 1), and received commission payments based upon the revenue of rentals at the location where each Plaintiff worked, (Doc. 82-3 at 18–20). However, Plaintiffs produced pay records for Reese suggesting that he was not paid a salary but was paid hourly. (Reese Pay History, Doc. 87-1, at 2–4 (showing that Reese was paid only for the hours worked when he worked less than forty hours in a week)).

As a result of the initiation of the two instant consolidated lawsuits, Defendant "t[ook] a closer look at [its] payroll records to see if there was a flaw." (Doc. 82-3 at 28). Defendant discovered that approximately fifteen to twenty of its employees were "underpaid" as a result of a payroll "flaw." (*Id.*). The underpaid wages amounted to approximately $20,000. (*Id.*; *see also* Def.'s Resps. to Pls.' Third Req. for Admiss., Doc. 82-4, at 5 (admitting that the underpaid wages

calculated by Defendant were greater than $20,000 and less than $25,000)). Defendant then "paid all affected employees double the amounts due, except those individuals represented by . . . counsel who rejected the payments in favor of continued litigation." (Doc. 82-4 at 2–3).

## B. Reese's Tortious Interference Claim

Defendant states that it makes use of standard non-compete and non-solicitation agreements, which it requires all of its Sales Coordinators to sign. (Doc. 84-1 at 2). Defendant contends that Reese signed a non-compete at the time he completed the rest of his employment paperwork. (*Id.*). Reese states that he did not sign a non-compete. (Reese Dep., Doc. 87-12, at 3). Defendant has not produced a signed copy of the purported non-compete. (*See* Ahern Letter, Doc. 87-16, at 1 (noting that Reese did not sign a non-compete and requesting a copy of the signed copy if one existed); Def.'s Cease and Desist Letter to Reese, Doc. 84-11, at 1–5 (attaching unsigned copies of the standard non-compete); Ahern Emails, Doc. 84-11, at 6–8 (discussing the absence of any signed non-compete)).

On December 27, 2016, non-party Ahern Rentals ("Ahern") was contemplating hiring Reese and sent a letter to Defendant requesting any and all agreements to which Reese may be subject to by Defendant. (Doc. 87-16 at 1). The letter noted that if Ahern did not receive a response that it would consider the non-response as acquiescence to the employment of Reese by Ahern and waiver of any rights regarding any purported agreements between Defendant and Reese. (*Id.*). Defendant did not respond. (Doc. 84-11 at 8). Ahern presumably hired Reese shortly thereafter.[1]

---

[1] There is no evidence in the record showing a hire date by Ahern of Reese, but correspondence between Ahern and Defendant indicates that Reese was terminated by Ahern in May 2017, leading to an inference that Reese was up until that point employed by Ahern.

In May 2017,[2] Defendant sent a cease and desist letter to Reese with a copy to Ahern. (Doc. 84-11 at 1). The letter indicated that Reese was violating the purported non-compete by working for Ahern. (*Id.*). The letter then informed Reese that he had five days to confirm termination of his employment with Ahern, or Defendant would file a lawsuit to enforce its purported rights. (*Id.*). Attached to the letter are unsigned copies of Defendant's standard non-compete. As a result of the cease and desist letter, Reese was terminated by Ahern. (*Id.* at 6).

### C.    Pending Motions

In his Complaint, Reese pleaded three counts: (I) an FLSA individual claim; (II) an FLSA collective action claim; and (III) a tortious interference claim. (Doc. 2 at 8–12). Ward pleaded two counts: (I) an FLSA individual claim; and (II) an FLSA collective action claim. (*Ward*, Doc. 1 at 6–8). As noted, the two cases were consolidated. (Doc. 69 at 1). The parties have filed cross motions for summary judgment, arguing that they are entitled to judgment as a matter of law as to various aspects of the claims and defenses. (*See generally* Doc. Nos. 82, 84).

Reese is also seeking permission to request punitive damages at trial for his tortious interference claim. (*See generally* Doc. 54). Reese originally filed such a motion in November 2018, (Doc. 54), but it was denied as moot when the cases were consolidated. (Doc. 69 at 2). Now before the Court is Reese's Renewed Motion.

### II.    MOTION TO HAVE THE FINAL JUDGMENT INCLUDE PUNITIVE DAMAGES

### A.    Local Rule 3.01(g) Certification

Before addressing the merits of Reese's arguments, the Court recognizes Defendant's argument that Reese's Renewed Motion fails to comply with Local Rule 3.01(g). Local Rule

---

[2] The letter is dated May 26, 2016, but based on the remaining record of events before the Court, the Court presumes that the 2016 date was a typo and that the letter was sent in 2017.

3.01(g) commands that, subject to enumerated exceptions that do not apply to the Renewed Motion, "any motion in a civil case" shall contain certification that the moving party conferred with the opposing party "in a good faith effort to resolve the issues raised by the motion." "The rule does not except renewed motions." *Am. Registry, Ltd. Liab. Co. v. Hanaw*, No. 2:13-cv-352-FtM-29CM, 2014 U.S. Dist. LEXIS 68488, at *2–3 (M.D. Fla. May 19, 2014) (collecting cases). Accordingly, this Court could deny the Renewed Motion on this basis alone. *Esrick v. Mitchell*, No. 5:08-cv-50-Oc-10GRJ, 2008 U.S. Dist. LEXIS 101304, at *3 n.6 (M.D. Fla. Dec. 3, 2008) (collecting cases in the Middle District of Florida where motions were denied for failure of the moving party to comply with Local Rule 3.01(g)). However, the Court also has the discretion to suspend any application or enforcement of the Local Rules "in the interests of justice." M.D. Fla. R. 1.01(c). The Court will do so here in order to rule on the merits of the Renewed Motion. *Commun. Ctr., Inc. v. Komatsu*, No. 6:05-cv-1254-Orl-31GJK, 2008 U.S. Dist. LEXIS 119363, at *5 (M.D. Fla. Feb. 13, 2008).

### B.    FLSA Claims

It appears from the argument in Reese's Renewed Motion that he seeks punitive damages only for the tortious interference claim. However, because the Renewed Motion does not expressly state this, the Court will note that punitive damages are not available for FLSA civil claims. *Bolick v. Brevard Cty. Sheriff's Dep't*, 937 F. Supp. 1560, 1566 (M.D. Fla. 1996); *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 939 (11th Cir. 2000).

### C.    Tortious Interference Claim

#### 1.    *Supplemental Jurisdiction*

As an initial matter, Defendant argues that the Court lacks jurisdiction over Reese's tortious interference claim. As this argument raises a question about the Court's subject matter jurisdiction,

the Court held a telephonic status conference with the parties to determine how they would like to be heard on the matter. (Min. Entry, Doc. 99). The Court permitted the parties to each file briefs addressing whether the Court has supplemental jurisdiction over Reese's tortious interference claim. (Dec. 20, 2019 Order, Doc. 98, at 2; Dec. 27, 2019 Amended Order, Doc. 101, at 2; *see* Reese's Brief on Supplemental Jurisdiction, Doc. 102; Def.'s Brief Regarding Supplemental Jurisdiction, Doc. 103). The Court now considers the parties' arguments in these filings prior to moving forward with determining whether Reese should be permitted to request punitive damages associated with his tortious interference claim.

Under 28 U.S.C. § 1367(a), "federal courts [have] 'the power to exercise supplemental jurisdiction over all claims that arise out of a common nucleus of operative fact with a substantial federal claim.'" *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 678 (11th Cir. 2012) (quoting *Tamiami Partners, Ltd. ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1223 (11th Cir. 1999)). Based on the allegations in the Complaint, where the federal and state claims each "'involve[] the same facts, occurrences, witnesses, and evidence,' the case or controversy requirement of section 1367 is satisfied." *World Holdings, Ltd. Liab. Co. v. F.R.G.*, 701 F.3d 641, 651 (11th Cir. 2012) (quoting *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1560 (11th Cir. 1994)). If a federal court has supplemental jurisdiction to hear a related state law claim pursuant to § 1367(a), the Court has discretion on whether to exercise its power based on statutory factors, 28 U.S.C. § 1367(c), and on considerations of "judicial economy, convenience, and fairness." *Hammett v. Bellsouth Telcoms, LLC*, No. 18-62156-CIV-DIMITROULEAS, 2018 U.S. Dist. LEXIS 224095, at *5 (S.D. Fla. Oct. 15, 2018) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Reese argues that supplemental jurisdiction is present because there are similar facts, occurrences, evidence, and witnesses between the FLSA claims and the tortious interference claim. Specifically, Reese asserts that Defendant's alleged failure to pay overtime is a defense to enforcement of the non-compete agreement; the non-compete agreement contains language specifically relevant to the nature of Defendant's business and Reese's duties in his position as a Sales Coordinator; and many of the witnesses overlap. Defendant argues that the tortious interference claim "has nothing to do with [Reese's] FLSA claims." (Doc. 103 at 3).

Section 1367(a) is satisfied, and the Court may exercise supplemental jurisdiction over a state law claim, when the state and federal claims involve the same facts, occurrences, witnesses, and evidence. *World Holdings*, 701 F.3d at 651. An employment relationship alone is insufficient to satisfy § 1367. *Malphurs v. Cooling Tower Sys.*, No. 5:13-CV-443(MTT), 2014 U.S. Dist. LEXIS 58388, at *5–6 (M.D. Ga. Apr. 28, 2014); *see also O'Grady v. Dough*, 2013 U.S. Dist. LEXIS 86270, at *1 (M.D. Fla.) (citation omitted). However, Reese has set forth significantly more than just the similarity of the employment relationship that intertwines the FLSA claims and the tortious interference claim. Reese argues that the resolution of questions integrally involved in the FLSA overtime wage claims will serve as a defense to enforcement of the non-compete agreement, if one actually exists. In other words, if Defendant failed to properly pay Reese, then Reese may be able to assert the defense of prior breach. Next, Reese points to no less than four witnesses for the FLSA claims—including an Opt-in Plaintiff—who have been deposed and/or will testify to facts relevant to Reese's tortious interference claim. All of this is more than enough to satisfy § 1367(a), allowing the Court to exercise supplemental jurisdiction over Reese's tortious interference claim.

Furthermore, the Court does not find any of the § 1367(c) factors to be present—the tortious interference claim does not raise novel or complex issues of state law, it does not substantially predominate over the FLSA claims, and neither the parties nor the Court have identified any other exceptional circumstances that would warrant this Court declining to exercise supplemental jurisdiction. Finally, the Court finds that judicial economy and convenience would be served by exercising jurisdiction over Reese's tortious interference claim.

### 2. *Procedural Arguments*

Next, Defendant argues that Reese's Renewed Motion is an untimely attempt to amend the Complaint. In support of this argument, Defendant summarily asserts that while "the Motion is not styled as a motion to amend, it has the same effect and should be treated as such." (Doc. 86 at 4). Reese's Renewed Motion is not a motion to amend, and Defendant has not cited any legal authority that supports its conclusion that the motion should be treated as one. Thus, the Court declines to apply the legal standard for a motion to amend to the instant motion.

Defendant also asserts that "Reese's Motion should not be granted because the relief sought is futile." (Doc. 86 at 5). Defendant cites no legal authority to support this argument. The Court presumes that Defendant is referring to the Court's discretion to deny a motion for leave to amend if the amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But, as stated above, Reese has not filed a motion to amend. Additionally, to the extent that Defendant's argument asserts that "Reese will not succeed on his tortious interference claim" for the reasons argued in Defendant's MSJ, that motion will be denied by the Court, as discussed below in Section III.C.

### 3. Substantive Arguments

Finally, the parties disagree as to whether Reese may, in accordance with Florida law, request punitive damages for a tortious interference claim. Defendant argues that punitive damages are not recoverable for tortious interference claims. However, Defendant relies on a case that addresses Alabama substantive law, which does not apply to this claim as it is controlled by Florida substantive law. (*See* Doc. 86 at 6 (citing *Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.*, 984 F.2d 1118, 1127 (11th Cir. 1993) (applying the test for punitive damages set forth in the Alabama Code))). Under Florida law, punitive damages may be considered for a tortious interference claim. *See, e.g.*, *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 708 (Fla. 4th DCA 2008) (noting the Florida standard for punitive damages for the intentional tort of tortious interference).

Thus, the question becomes whether Reese may request punitive damages for this particular claim of tortious interference. "Under the Erie doctrine, a federal court adjudicating state law claims must apply state substantive law and federal procedural law. This rule also applies where a federal court decides supplemental state law claims." *EarthCam, Inc. v. Oxblue Corp.*, 658 F. App'x 526, 529 (11th Cir. 2016) (citations omitted). Federal Rule of Civil Procedure 8(a) provides the relevant pleading standard, stating that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought." Rule 9(g) expands on Rule 8(a) and requires that "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9(g). Finally, Rule 54(c) states that with the exception of a default judgment, a Court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." The Court will analyze Reese's request in the context of these rules.

Reese argues that "there need not be a specific demand for punitive damages in the complaint for such damages to be included in the final judgment." (Doc. 83 at 2). Defendant does not provide a counter argument to this point. While the Eleventh Circuit has not expressly decided whether punitive damages are "an item of special damage" pursuant to Rule 9(g), the circuit court has held that "a specific prayer for punitive damages [i]s unnecessary . . . when [t]he complaint allege[s] an adequate factual basis for punitive damages." *Scutieri v. Paige*, 808 F.2d 785, 792–93 (11th Cir. 1987) (analyzing the issue in the context of Rule 54(c) and holding that failure to present the issue of punitive damages to the jury was "reversible error").

Reese's Complaint states that Reese "does not recall ever signing a non-compete agreement with [Defendant]." (Doc. 2 at 7). Defendant has not produced a signed copy of the purported non-compete, and it appears that Defendant knew at the time of the Complaint that a signed copy did not exist. (*See id.*; Doc. 87-16 at 1; Doc. 84-11 at 1–5; Doc. 84-11 at 6–8). Reese's Complaint also cites the Florida statute providing that a court shall not enforce a restrictive covenant such as a non-compete unless it is set forth in writing and signed by the person against whom enforcement is sought. (Doc. 2 at 6 (citing Fla. Stat. § 542.335(1)(a))). Next, Reese's Complaint alleges that Defendant—while apparently knowing that it did not have a signed non-compete agreement— nonetheless attempted to enforce such an agreement, resulting in Reese's termination from Ahern. Finally, Reese's Complaint alleges that these actions were taken by Defendant "with the sole intent of procuring [Reese's] termination." (Doc. 2 at 7). These facts provide an adequate factual basis to support a potential claim for punitive damages, such that this Court finds it appropriate to allow Reese to submit the issue to a jury. *Hetrick v. Ideal Image Dev. Corp.*, No. 8:07-cv-871-T-33TBM, 2009 U.S. Dist. LEXIS 2083, at *6 (M.D. Fla. Jan. 5, 2009) (holding that "[the] court [wa]s

required to present the punitive damages issue to the jury" when the complaint contained allegations of intentional misrepresentation).

### III.    MOTIONS FOR SUMMARY JUDGMENT

#### A.    Legal Standard

 "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

 "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251–52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### B.    Analysis—FLSA Claims

The FLSA was enacted in 1938 to "aid the unprotected, unorganized, and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945)). The FLSA "establishes a minimum wage and overtime compensation for each hour worked in excess of [forty] hours in each workweek for many employees." *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015) (quotations omitted) (alterations incorporated).

The FLSA also contains express exemptions, whereby minimum wage and overtime provisions of the FLSA do not apply if an employee falls within one of the specified classes. *Id.*; *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1265 (11th Cir. 2008). "The employer bears the burden of establishing that it is entitled to an FLSA exemption." *Watkins v. City of Montgomery*, 775 F.3d 1280, 1283 (11th Cir. 2014). While FLSA exemptions were previously "construed narrowly against the employer," *Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 877 (11th Cir. 2010), the United States Supreme Court recently expressly rejected this canon in *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018). "FLSA exemptions should be given 'a fair reading.'" *Casey v. 1400 Northside Drive, Inc.*, No. 1:16-cv-4517-SCJ, 2018 U.S. Dist. LEXIS 221223, at *2 (N.D. Ga. Aug. 6, 2018) (quoting *Encino*, 138 S. Ct. at 1142) (also discussing *Encino*'s dissenting opinion on the matter).

#### 1.    Administrative Exemption

The FLSA exempts any employee "employed in a bona fide executive, administrative, or professional capacity." *Perez*, 135 S. Ct. at 1204 (quoting 29 U.S.C. § 213(a)(1)). United States

Department of Labor regulations (hereinafter, "FLSA regulations")[3] interpret the administrative portion of this exemption to mean an employee who:

> (1) is compensated on a salary basis above a certain amount;[4] (2) has as a primary duty the performance o[f] office or non-manual work "directly related to the management or general business operations of the employer or the employer's customers"; and (3) has as a primary duty "the exercise of discretion and independent judgment with respect to matters of significance."

*Gonzalez v. Batmasian*, 734 F. App'x 677, 680 (11th Cir. 2018) (quoting 29 C.F.R. § 541.200); *Watkins*, 775 F.3d at 1283. Both parties move for summary judgment on this exemption, but Plaintiff only moves as to certain factors. Nonetheless, the parties disagree as to every one of the factors.

### a.    Salary Basis

As to the first factor—whether the employee is compensated on a salary basis above $455 per week—Defendant is the only one moving for summary judgment on this factor and it has generally failed to cite evidence in support of its argument. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."); *id.* at 56(c)(3) ("The court need consider only the cited materials."). Defendant's MSJ states: "Reese and Ward were each paid a salary of $25,000.00 per year in addition to a commission based on branch sales." (Doc. 84 at 3). But Defendant fails to cite any evidence in the record that supports this statement as an undisputed fact. Later, Defendant states again that "Reese was compensated a salary of $25,000 per year, plus

---

[3] For a discussion on deference to the FLSA regulations see *Rodriguez v. Home Heroes, LLC*, No. 8:13-cv-2711-T-26AEP, 2015 U.S. Dist. LEXIS 18769, at *18 (M.D. Fla. Feb. 17, 2015), and *McKenzie v. Lindstrom Air Conditioning, Inc.*, No. 08-CV-61378-GOLD-McALILEY, 2009 U.S. Dist. LEXIS 139086, at *8–9 (S.D. Fla. Sep. 3, 2009).

[4] For the purposes of this case, this amount is $455 per week. *See Watkins*, 775 F.3d at 1283 (citing 29 C.F.R. § 541.200(a)).

a commission guarantee of $1,667 per month." (*Id.* at 16). But once again, Defendant provides no citation whatsoever. In fact, under the heading in Defendant's MSJ titled "Reese and Ward received sufficient pay to qualify for the exemption," Defendant does not provide a single citation to evidence, nor can it reference previous citations because it has provided none. (*Id.* at 15–16).

The singular citation to evidence on this point in Defendant's MSJ appears near the end of the motion, where Defendant states that Plaintiffs "were each paid a salary of $480.77 per week, plus a commission." (*Id.* at 21 (citing Doc. 84-1 at 5)). But this statement—the only one supported by a record citation—is problematic as well. First, the evidence does not say what Defendant purports it to say. The declaration cited states that Reese and Ward "were paid a salary plus a commission." (Doc. 84-1 at 5). It does not include any information regarding the amount of the salary. Second, Plaintiffs have produced evidence suggesting that they may not have been paid on a salary basis and instead were paid hourly. (Doc. 87-1 at 2–4). That is, Reese's check history shows that for some weeks he was paid "Salary" for "40.00" hours, whereas other weeks he was paid "Regular" pay for a number of hours less than forty, which would indicate that he may have been paid hourly these weeks. (*Id.*) Therefore, on this element of the exemption, there exists a disputed issue of fact.

Defendant must demonstrate that *all* of the factors of the administrative exemption have been met in order to be exempt, and it has failed to do so. As the summary judgment burden is on the moving party—and Defendant has failed to meet that burden. Summary judgment is due to be denied to Defendant as to the administrative exemption.

### b. Primary Duty

The question to be answered for this factor is whether the employee "has as a primary duty the performance o[f] office or non-manual work 'directly related to the management or general

business operations of the employer or the employer's customers.'" *Gonzalez*, 734 F. App'x at 680 (quoting 29 C.F.R. § 541.200(a)). An employee's "primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The regulations also clarify that "[t]he phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee[, and t]o meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business." *Id.* § 541.200(a). Work that falls within this definition "includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." *Id.* § 541.200(b).

The primary duty determination "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* § 541.700(a). The Eleventh Circuit has recognized "the necessarily fact-intensive nature of the primary duty inquiry, that the answer is in the details, and that where an issue turns on the particular facts and circumstances of a case, it is not unusual for there to be evidence on both sides of the question, with the result hanging in the balance." *Morgan*, 551 F.3d at 1269 (internal quotes and citations omitted); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264 (11th Cir. 2008) ("When it comes to deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details.").

Plaintiffs argue that they did not perform any of the type of work noted in the § 541.200(b) list and that their "primary duty" was "rent[ing], sell[ing], and servic[ing] construction

equipment." (Doc. 82 at 6). Whereas Defendant describes Plaintiffs' roles as Sales Coordinators differently. Defendant contends that Plaintiffs, *inter alia*, "(i) prepared sales contracts, (ii) provided customer service, (iii) managed the delivery of equipment to the purchaser, (iv) handled customer complaints, (v) arranged for repairs or replacement of equipment to be made, (vi) inspected returned equipment, and (vii) advised customers on products." (Doc. 89 at 6).

Plaintiffs argue that their primary duty was related to rental, sales, and service of the construction equipment, but Plaintiffs also do not dispute that the Sales Coordinator job description is an accurate representation of the duties of a Sales Coordinator. (Doc. 25-2 at 1; Doc. 82-8, at 3). This job description includes as "principal duties" documenting sales activity, managing equipment rentals, and maintaining inventory records. (Doc. 25-2 at 1). While "managing" may on its face appear to support a finding that this element of the administrative exemption is met, it is not dispositive. *Rutenberg v. Boynton Carolina Ale House, LLC*, No. 09-80409-CIV, 2010 U.S. Dist. LEXIS 1520, at *3 (S.D. Fla. Jan. 8, 2010) ("[M]erely having the title 'manager' is not talismanic, and the Court must still engage in a fact-specific inquiry to determine whether Plaintiff's most critical duties to the enterprise were his exempt managerial duties."). Other than generic references to "[a]ssist[ing] customers" and "[o]ther duties as assigned," (Doc. 25-2 at 1), the job description does not include any duties that would indicate that renting, selling, or servicing the construction equipment is a principal duty of a Sales Coordinator. The job description also notes twice that one of the principal duties of a Sales Coordinator is *supporting* sales staff, (*id.*), which leads to an inference that the task of renting and selling is not a primary duty of Sales Coordinators. The job description thus conflicts with other evidence in the record that shows that

Sales Coordinators do in fact rent equipment and obtain rental contracts.[5] (Thompson Dep., Doc. 82-9, at 4; Doc. 82-3 at 22–23).

Despite all parties agreeing that the job description is an accurate representation of what a Sales Coordinator does, that description does not resolve the primary duty question, and a disputed issue of material fact exists. Therefore, Plaintiffs have not met their burden for summary judgment on this issue. With "the necessarily fact-intensive nature of the primary duty inquiry, . . . the answer is in the details," *Morgan*, 551 F.3d at 1269, and neither party has provided sufficient details—supported by undisputed record evidence—to determine the "character of the [Sales Coordinator] job as a whole." 29 C.F.R. § 541.700(a). Thus, summary judgment will not be granted to either party on the administrative exemption.

### 2. Commissioned Work Exemption

Next, Plaintiffs move for summary judgment on what they call the retail or service establishment exemption. This FLSA exemption applies to "commissioned work," at a retail or service establishment. *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 n.2 (11th Cir. 2001) (citing 29 U.S.C. § 207(i)). The exemption provides that:

> No employer shall be deemed to have violated [FLSA's overtime provisions] by employing any employee at a retail or service establishment for a workweek in excess of [40 hours], if (1) the regular rate of pay of such employee is in excess of one and one-half

---

[5] This portion of a Sales Coordinator's job may very well be incidental in time and/or importance, such that the employee could still be found to be exempt, but the parties have not cited evidence in the record that would resolve this question. *See* 29 C.F.R. § 541.700(a) (listing as factors to be considered in the primary duty determination "the relative importance of the exempt duties as compared with other types of duties[ and] the amount of time spent performing exempt work"). According to FLSA regulations, "employees who spend more than [fifty] percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than [fifty] percent of their time performing exempt work. Employees who do not spend more than [fifty] percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.* § 541.700(b).

> times the minimum [wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i). Plaintiffs argue that Defendant cannot establish this exemption because Defendant is not a "retail or service establishment," and Sales Coordinators were not paid one and one-half times the minimum wage for all hours worked. Defendant argues that Sales Coordinators do qualify under this exemption, though Defendant does not move for summary judgment on this question.

As a threshold issue here, Plaintiffs appear to confuse their burden on summary judgment. While it is true that "[t]he employer bears the burden of establishing that it is entitled to an FLSA exemption," *Watkins*, 775 F.3d at 1283, this requirement does not shift the burden on summary judgment away from the moving party. Here, Plaintiffs move for summary judgment on this exemption, and Defendant does not, so "the burden of production . . . is on Plaintiff[s]. Therefore, for Plaintiff[s'] Motion to be granted, Plaintiffs have the burden of showing that there are no genuine issues of fact, and that it can be determined as a matter of law that the exemption does not apply." *Mendoza v. Am. Fruit & Produce Corp.*, No. 07-21879-CIV-LENARD/TORRES, 2008 U.S. Dist. LEXIS 84921, at *5 n.3 (S.D. Fla. Oct. 22, 2008).

As to the first consideration of § 207(i), the exemption only applies to "a retail or service establishment." 29 U.S.C. § 207(i). "The determination of whether an establishment qualifies as retail is a matter of law for the court." *Home Heroes*, 2015 U.S. Dist. LEXIS 18769, at *14. The term "retail or service establishment" is not defined in the current version of the statute containing the exemption. However, despite its repeal, courts continue to apply the definition contained in the previous version of the statute. *Id.* at *15 ("Absent specific congressional intent, [courts] will not conclude that Congress retained the term 'retail or service establishment' in § 207(i) yet at the

same time discarded thirty years of established meaning." (quoting *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993))); *see also Gieg v. DRR, Inc.*, 407 F.3d 1038, 1047 (9th Cir. 2005). Thus, the applicable definition of a retail or service establishment is "an establishment '[seventy-five] per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and recognized as retail sales or services in the particular industry.'" *Id.* (quoting 29 U.S.C. § 213(a)(2), *repealed by*, Pub. L. No. 101-157, § 3(c)(1), 103 Stat. 939 (1989); 29 C.F.R. § 779.411).

Oddly enough, neither party cites this definition. Nonetheless, the FLSA regulations break down the definition of a retail or service establishment into three parts:

> The statutory definition of the term "retail or service establishment" . . . clearly provides that an establishment to be a "retail or service establishment": (a) Must engage in the making of sales of goods or services; and (b) [seventy-five] percent of its sales of goods or services, or of both, must be recognized as retail in the particular industry; and (c) not over [twenty-five] percent of its sales of goods or services, or of both, may be sales for resale.

29 C.F.R. § 779.313.

First, "a business must have a 'retail concept . . . before the industry characterization of its sales can be considered." *Jones v. Tucker Communs., Inc.*, No. 5:11-cv-398 (MTT), 2013 U.S. Dist. LEXIS 163509, at *18 (M.D. Ga. Nov. 18, 2013) (quoting *Brennan v. Great Am. Disc. & Credit Co.*, 477 F.2d 292, 295 (5th Cir. 1973) (internal quotations omitted)); *see also* 29 C.F.R. § 779.316. FLSA regulations attempt to clarify the question, stating that "[t]ypically a retail or service establishment is one which sells goods or services to the general public." 29 C.F.R. § 779.318(a). The establishment "serves the everyday needs of the community in which it is located." *Id.* And establishments lacking the "retail concept" do not qualify. *Id.* § 779.316. But this definition has its limits. For example, the regulation notes that this is the "[t]ypical[]" definition

for a retail or service establishment. *Id.* Thus, an establishment could be atypical of this definition

and still be a retail or service establishment within the meaning of the exemption. On the other end

of the spectrum, the FLSA regulations note that "not every establishment which engages in retail

selling of goods or services will constitute a 'retail or service establishment' within the meaning

of [the FLSA]." 29 C.F.R. § 779.24. However, "a 'retail concept' cannot be artificially created in

an industry in which there is no traditional concept of retail selling or servicing." 29 C.F.R.

§ 779.316.

"Determination of whether a business fits within a retail concept is not easy," *McKenzie v.*

*Lindstrom Air Conditioning, Inc.*, No. 08-CV-61378-GOLD-McALILEY, 2009 U.S. Dist. LEXIS

139086, at *6 (S.D. Fla. Sep. 3, 2009), and "[t]he approach is necessarily case-by-case in

determining whether the particular establishment possesses a retail concept." *Home Heroes*, 2015

U.S. Dist. LEXIS 18769, at *19. Plaintiffs argue that Defendant falls within the "partial list of

establishments lacking retail concept" enumerated in the regulations. 29 C.F.R. § 779.317. That

is, "establishments engaged in selling or servicing of construction, mining, manufacturing and

industrial machinery, equipment and tools" definitively lack a retail concept sufficient to fall under

the exemption. *Id.* Defendant rightly counters this absolute assertion by correctly noting that the

list contained in "§ 779.317 is not necessarily determinative of whether [a business] qualifies as a

retail establishment." (Doc. 89 at 8 n.2); *see Home Heroes*, 2015 U.S. Dist. LEXIS 18769, at *19

n.54 (citing *Alvarado v. Corp. Cleaning Serv.*, 719 F. Supp. 2d 935, 946 (N.D. Ill. 2010) (collecting

cases)).

"Courts have applied varying degrees of deference to the [FLSA] regulations . . . ,

depending on their nature and status." *Home Heroes*, 2015 U.S. Dist. LEXIS 18769, at *18 (citing

*Selz v. Investools, Inc.*, No. 2:09-cv-1042 TS, 2011 U.S. Dist. LEXIS 9364, at *11 n.29 (D. Utah

Jan. 27, 2011) (listing cases with differing applications of degrees of deference)). "Some circumstances warrant application of the more limited *Skidmore* deference, while others justify the higher level deference of *Chevron*." *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Regulations are afforded the greatest deference—*Chevron* deference—"unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. 837, 844 (1984). "If the regulation does not pass *Chevron* muster, then the more limited *Skidmore* deference, one of persuasion, is applied to the agency interpretation." *Home Heroes*, 2015 U.S. Dist. LEXIS 18769, at *18–19 (citing *Skidmore*, 323 U.S. at 140 (holding that interpretive regulations not meeting *Chevron* standards still "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance")).

This Court will take a cue from previous cases in the Middle District of Florida and look to both the list contained in 29 C.F.R. § 779.317 and the characteristics set forth in 29 C.F.R. § 779.318 to determine whether Defendant lacks a retail concept. *See Reich v. Cruises Only, Inc.*, No 95-660-CIV-ORL-19, 1997 U.S. Dist. LEXIS 23727, at *9–12 (M.D. Fla. June 4, 1997) (holding that the list in 29 C.F.R. § 779.317 is arbitrary and applying the characteristics in 29 C.F.R. § 779.318 to determine whether the business lacked a retail concept); *Home Heroes*, 2015 U.S. Dist. LEXIS 18769, at *23 (holding that "[t]he Court need not find that the regulation is arbitrary and capricious" but still applying the characteristics in 29 C.F.R. § 779.318 to determine whether the business lacked a retail concept).

Defendant argues that Plaintiffs have mischaracterized it as "a construction company." (Doc. 89 at 9). While "[c]onstruction contractors" and "[s]pecial trade contractors (construction industry)" are included in the list contained in 29 C.F.R. § 779.317, the list also contains another

category that references a narrower business—"establishments engaged in selling or servicing of construction, . . . equipment and tools." This is the category that Plaintiffs cite. This is a different business category than simply a construction company. And, it is a category that aptly describes exactly what business Defendant is engaged in. (Doc. 82-3 at 6 (stating that Defendant "sell[s], lease[s], and service[s] construction equipment" and does nothing else)).

The FLSA regulations note that in circumstances such as this, "[t]he list of strictly commercial items whose sale can be deemed retail is very small." 29 C.F.R. § 779.318(b). Defendant essentially argues, without any citation to record evidence, that its business falls within this very small minority. The Court is unpersuaded by this argument. Defendant does not "[t]ypically . . . sell[] goods or services to the general public." 29 C.F.R. § 779.318(a); (Doc. 82-3 (stating that Defendant sells and leases its equipment to "construction companies," which are not the general public)). Defendant does not "serve[] the everyday needs of the community" or provide "services for the comfort and convenience of [the] public in the course of its daily living." 29 C.F.R. § 779.318(a). Indeed, there is no evidence that the general public has an everyday need for "[h]eavy [equipment], earth [equipment], compact equipment, aerial equipment, pumps, [or] trench boxes." (Doc. 82-3 at 16). And while Defendant states that it leases and sells other equipment such as "plumbing snakes [and] pressure washers," (Doc. 84-1 at 2), which might be more likely to be used by the general public, Defendant admits that leases and sales of heavy equipment and the like are what "run[] the business." (Doc. 82-3 at 16).

To quote the Eleventh Circuit, the Court will "adhere to the time-tested adage: if it walks like a duck, quacks like a duck, and looks like a duck, then it's a duck." *Sierra Club v. Flowers*, 526 F.3d 1353, 1359 (11th Cir. 2008) (quoting *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1337 (11th Cir. 1998) (Tjoflat, J.)). Defendant is attempting to divine a retail concept when

such just does not exist within the industry in which it does business. Defendant's business lacks a retail concept because it fits within an exact category enumerated in the FLSA regulations as lacking retail concept, 29 C.F.R. § 779.317, and it also fails to demonstrate any of the characteristics set forth in 29 C.F.R. § 779.318.[6] Therefore, this Court need not consider the remaining two parts of the statutory definition of retail or service establishment, 29 C.F.R. § 779.313, nor the remaining two wage and compensation questions pursuant to 29 U.S.C. § 207(i). The Court will grant summary judgment to Plaintiffs on the issue of the commissioned work exemption.

### 3.    *Combination Exemption*

Next, Plaintiffs move for summary judgment on Defendant's asserted combination exemption. The so-called "combination exemption" is not actually a stand-alone exemption. *Drake v. Steak N Shake Ops.*, No. 4:14-cv-01535-JAR, 2019 U.S. Dist. LEXIS 8167, at *4 (E.D. Mo. Jan. 15, 2019) (citing *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 295 (4th Cir. 2007)).[7] Rather, this provision in the FLSA regulations "provides a mechanism for cobbling together different exempt duties for purposes of meeting the primary-duty test." *Harrison v. U.S. Pipe & Foundry*, No. 2:14-cv-01806-JEO, 2016 U.S. Dist. LEXIS 118259, at *32 (N.D. Ala. Apr. 19, 2016) (quoting *IntraComm*, 492 F.3d at 294). That is, "[e]mployees who perform a combination of exempt duties

---

[6] The Court therefore finds it unnecessary to determine whether the inclusion of the specific category on the list in 29 C.F.R. § 779.317 is arbitrary and capricious.

[7] "In *IntraComm* . . . , the Fourth Circuit relied on the Secretary of Labor's interpretation to conclude that § 541.708 does not give rise to an independent exemption. . . . [T]he court noted the Secretary's 'longstanding support of' 'reading the combination-exemption regulation to provide an alternative method for satisfying the primary-duty test,' 'rather than creating a new, independent test for exempt status.'" *Drake*, 2019 U.S. Dist. LEXIS 8167, at *4–5 (quoting *IntraComm*, 492 F.3d at 295). Additionally, "the combination exemption is found in Subpart H, 'Definitions and Miscellaneous Provisions,' along with sections providing guidance on determining primary duty . . . . It does not appear in a dedicated subpart outlining the specific requirements for proving exempt status, as the other express exemptions are." *Id.*

as set forth in the [FLSA] regulations . . . for executive, administrative, professional, outside sales and computer employees may qualify for exemption." 29 C.F.R. § 541.708. "[F]or example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption." *Id.*

Plaintiffs argue that Defendant "cannot claim this exemption as a matter of law" because Defendant has only asserted one such exemption that can be combined under this provision of the FLSA regulations—the administrative exemption contained in § 213(a). (Doc. 82 at 15–16). However, the FLSA regulations and legal authority both make clear that the exemption expressed in 29 U.S.C. § 213(a)(1) actually encompasses multiple exemptions—the executive exemption, the administrative exemption, and the professional exemption. *See* 29 C.F.R. § 541.0(b) ("The requirements for *these* exemptions are contained in this part as follows: executive employees, subpart B; administrative employees, subpart C; professional employees, subpart D." (emphasis added)); *Bolick v. Brevard Cty. Sheriff's Dep't*, 937 F. Supp. 1560, 1570 (M.D. Fla. 1996) ("Congress expressly authorized the Secretary of Labor to define the scope of the executive, administrative, and professional employee exemptions."); *Wood v. Kinetic Sys.*, No. 1:10-cv-001-CWD, 2011 U.S. Dist. LEXIS 42438, at *11 n.10 (D. Idaho Apr. 19, 2011) ("Under the regulations, these are distinct exemptions.").

Courts in this circuit regularly consider the combination exemption based on a combination of the administrative and executive exemptions. *See, e.g.*, *Harrison*, 2016 U.S. Dist. LEXIS 118259, at *32–33. Indeed, even the example in the FLSA regulation setting out the combination exemption contemplates this exact scenario. 29 C.F.R. § 541.708 ("[F]or example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work

may qualify for exemption."). Thus, Plaintiffs' MSJ is due to be denied as to the combination exemption.

### 4. *Good Faith Defenses*

The FLSA contains safe harbor provisions that can protect employers from liability if they acted in good faith reliance on FLSA regulations or guidance in their failure to pay appropriate wages or overtime to employees. *Perez*, 135 S. Ct. at 1209 (citing 29 U.S.C. § 259(a), (b)(1)); *see also* 29 U.S.C. § 260. Defendant has asserted two such good faith defenses, contained in 29 U.S.C. §§ 259, 260.

### a. 29 U.S.C. § 259

The good faith defense contained in 29 U.S.C. § 259 provides that an employer is not subject to liability for the failure to pay overtime under the FLSA if "it demonstrates that the 'act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation' of the Administrator of the Department[ of Labor's] Wage and Hour Division, even when the guidance is later 'modified or rescinded.'" *Perez*, 135 S. Ct. at 1209 (quoting 29 U.S.C. § 259(a), (b)(1)); *see also Wouters v. Martin Cty.*, 9 F.3d 924, 930 n.20 (11th Cir. 1993). If established, this defense acts as a complete bar to an FLSA action. 29 U.S.C. § 259(a). The Eleventh Circuit uses an objective test that requires an employer to demonstrate three elements, drawn from the statutory language, to establish this defense: "the act or omission complained of" must have been "(1) taken in good faith and (2) . . . in conformity with and (3) in reliance on a written interpretation by [the Department of Labor]." *Thomas v. Waste Pro USA, Inc.*, No. 8:17-cv-2254-T-36CPT, 2019 U.S. Dist. LEXIS 169336, at *68–69 (M.D. Fla. Sep. 30, 2019) (quoting *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 926

(11th Cir. 1987)). Additionally, "[t]he written administrative interpretation must provide a clear answer to the particular situation." *Id.* at *69 (quoting *Cole*, 824 F.2d at 928).

Plaintiffs have moved for summary judgment on Defendant's § 259 good faith defense. Plaintiffs argue that Defendant has failed to identify or produce any written statement by the Department of Labor on which Defendant relied, despite numerous requests for such. Defendant counters by asserting that there are disputed issues of material fact with regard to its good faith defenses and that it relied "on the advice of counsel and analysis of applicable regulations" in making its FLSA exemption decisions. (Doc. 89 at 13).

As a threshold issue on this matter, Defendant highlights for the Court the standard on summary judgment. Defendant correctly notes that the Court must construe the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves*, 530 U.S. at 150. However, what Defendant omits is that when faced with a "properly supported motion for summary judgment," the nonmoving party "*must* come forward with *specific factual evidence*, presenting more than mere allegations." *Gargiulo*, 131 F.3d at 999 (emphasis added). Plaintiffs have presented the Court with a properly supported motion for summary judgment on this issue. Defendant now must put forth specific factual evidence to counter Plaintiffs' MSJ.

Plaintiffs assert, and the Court agrees, that Defendant has failed to produce any record evidence that it relied on a written interpretation by the Department of Labor that provides a clear answer to its particular situation with regard to the Sales Coordinators. The evidence in the record plainly supports a conclusion that Defendant has not produced any such evidence because Defendant in fact did not rely on a written interpretation by the Department of Labor. Defendant states that its "executive team classified Sales Coordinators as exempt based on the advice of counsel and applicable regulations and Department of Labor Guidance." (Doc. 82-1 at 5).

However, "[t]he law is clear that the section 259 good faith defense requires reliance on a written administrative statement." *Cusumano v. Maquipan Int'l, Inc.*, 390 F. Supp. 2d 1216, 1221 (M.D. Fla. 2005); *see also id.* ("The showing of objective good faith alone is insufficient: the employer must also show that it acted in actual conformity with and in reliance on written agency interpretation." (citation omitted)). And, even if Defendant did provide the applicable regulations it generically references, "good faith reliance on general regulations is not enough for a § 259 defense." *Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139, 1162 (N.D. Ala. 2018) (citing *Cole*, 824 F.2d at 927). The FLSA regulations themselves do not constitute a written interpretation sufficient to support a § 259 defense. *Ballehr v. Centers*, No. 5:08-cv-261-Oc-10GRJ, 2009 U.S. Dist. LEXIS 137219, at *18 (M.D. Fla. Nov. 10, 2009). "[T]o accept [the] argument that [an employer] relied on the regulations themselves, 'would mean that any employer could establish a good-faith defense simply by showing that it relied on a general [regulation] that provided no opinion regarding the employer's particular situation.'" *Id.* at *18 (quoting *Cole*, 824 F.2d at 928)).

Nor does there exist a disputed issue of material fact as Defendant contends. The evidence on the record is not disputed between the parties. Defendant relied on the advice of counsel—not a written administrative interpretation—in making its determination. Because Defendant has failed to provide or even reference a written administrative regulation, order, ruling, approval, or interpretation from the Department of Labor to support its § 259 good faith defense—as it must in this situation because it has been presented with a properly supported motion for summary judgment—Plaintiffs are entitled to summary judgment on the issue. *Cusumano*, 390 F. Supp. 2d at 1222.

<u>b.</u>     <u>29 U.S.C. § 260</u>

The good faith defense contained within 29 U.S.C. § 260 operates differently than the § 259 good faith defense. The § 259 defense functions as a complete bar to FLSA claims, whereas the § 260 defense is only applicable to the determination of damages after an FLSA violation has been established. *Cusumano*, 390 F. Supp. 2d at 1223. According to the liquidated damages provision of the FLSA, an employer can only be liable to an employee for unpaid minimum wages, unpaid overtime compensation, and liquidated damages resulting from a violation of the FLSA. 29 U.S.C. § 216(b). Thus, "[o]nly a violation of the FLSA results in a right to liquidated damages under the Act." *Atlanta Prof'l Firefighters Union, Local 134 v. City of* Atlanta, 920 F.2d 800, 806 (11th Cir.1991). The § 260 good faith defense then provides that in an FLSA action "to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages," a court may choose to award no liquidated damages "if the employer shows . . . that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." A § 260 good faith defense is therefore not ripe for consideration until after an FLSA violation has been established. *Cusumano*, 390 F. Supp. 2d at 1222–23; *Parker v. TaxPrep1, Inc.*, No. 5:13-cv-451-Oc-22PRL, 2015 U.S. Dist. LEXIS 95454, at *8 (M.D. Fla. July 1, 2015). No such violation has yet been established by Plaintiffs. Consequently, the Court will deny Plaintiffs' MSJ to the extent that it seeks summary judgment on the § 260 good faith defense.

5.     *Fluctuating Workweek Method*

FLSA regulations provide that, "[w]here there is a clear mutual understanding" between an employer and employee, a salaried employee may have fluctuating work hours from week to week and still be paid a regular salary as a fixed amount for whatever hours are worked even when

those hours vary from week to week. 29 C.F.R. § 778.114(a). This is referred to as a fluctuating workweek. *Id.* The fluctuating workweek does not relieve an employer of minimum wage requirements, *id.* at § 778.114(c), but it does affect the method for calculating overtime pay, *id.* at § 778.114(a). Under the FLSA standard method for overtime compensation, an employee must be paid at a rate of one and one-half times the regular hourly rate of pay for any hours worked over forty in a week. *Allen v. SunTrust Banks, Inc.*, No. 1:06-cv-3075-RWS, 2008 U.S. Dist. LEXIS 73453, at *11 (N.D. Ga. Sep. 24, 2008) (citing 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.107). Under the fluctuating workweek method for overtime compensation, the FLSA regulations permit an employee to be paid for overtime hours at a rate of one-half the regular hourly rate. *Id.* (citing 29 C.F.R. § 778.114(a)).

Plaintiffs argue that Defendant may not apply the fluctuating workweek method for calculation of overtime wages for Plaintiffs' misclassification claims and that Plaintiffs are instead due one and one-half times their hourly wages for unpaid overtime. Plaintiffs first request summary judgment on this issue as a matter of law, asserting that the fluctuating workweek method can never be applied in a misclassification case. Alternatively, Plaintiffs contend that even if they are incorrect solely as a matter of law, then the Court should still grant summary judgment on the issue in this case because the specific facts prevent the fluctuating workweek method from being properly applied. Defendant states that it is not attempting to apply the fluctuating workweek method in this case. Rather, Defendant simply asserts that "[t]he half-time method of calculating damages is appropriate in FLSA cases where the employee's salary was intended to compensate him or her for all hours worked." (Doc. 89 at 14).

The FLSA regulations require four criteria to be met in order for an employer to implement a fluctuating workweek for the purposes of FLSA:

(1) the employee clearly understands that the straight-salary covers whatever hours he or she is required to work;

(2) the straight-salary is paid irrespective of whether the workweek is one in which a full schedule of hours are worked;

(3) the straight-salary is sufficient to provide a pay-rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours worked is greatest; and

(4) in addition to straight-salary, the employee is paid for all hours in excess of the statutory maximum at a rate not less than one-half the regular rate of pay.

*Garcia v. Yachting Promotions, Inc.*, 662 F. App'x 795, 797 (11th Cir. 2016) (citing 29 C.F.R. § 778.114). Here, the Court will first look to the last element, requiring that an employee is paid overtime at a rate of not less than one-half the regular rate of pay. It is uncontested that Defendant "did not keep track of the Sales' Coordinators' hours worked prior to November 2016." (Doc. 82-2 at 1 (admitting); Doc. 82-3 at 21). Similarly, it is uncontested that Defendant also did not pay any overtime to Sales Coordinators' prior to November 2016, (Doc. 82-3 at 12–13), nor could it have because it is "without knowledge" of whether the Sales Coordinators worked overtime, (Def.'s Resps. to Pls.' First Req. for Admiss., Doc. 82-15, at 3). Defendant provides no counter argument or record citations to the contrary. In fact, Defendant explicitly states that it "does not allege that the fluctuating work week applies." (Doc. 89 at 3).

The FLSA criteria for applying the fluctuating workweek method are conjunctive. Plaintiffs have clearly met their summary judgment burden as to negating one of those criteria, and Defendant has not come forth with evidence to the contrary. Therefore, Plaintiffs are entitled to summary judgment on this issue, and the Court need not address any of Plaintiffs remaining arguments regarding the propriety of applying the fluctuating workweek method to

misclassification claims. The Court will grant summary judgment to Plaintiffs that Defendant may not apply the fluctuating workweek for calculating overtime prior to November 2016.[8]

### 6. *Defendant's Recordkeeping of Sales Coordinators' Time Records*

Plaintiffs move for summary judgment on the issue of whether Defendant maintained appropriate documentation of Sales Coordinators' time records. Plaintiffs couch this portion of its motion as a request for judgment that Plaintiffs' "can prove their claim at trial by a just and reasonable inference." (Doc. 82 at 23–24); *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88 (1946), *superseded on other grounds by statute*, 29 U.S.C. § 254(a), *as recognized in*, *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014). Defendant, rather than disputing the substance of whether it appropriately kept time records, argues that "[t]he evidentiary standard by which Plaintiffs need to prove . . . their case" is not an appropriate determination for the Court to make on summary judgment. (Doc. 89 at 14). In response, Plaintiffs point to Federal Rule of Civil Procedure 56(g) and argue that they are simply asking the Court to grant partial summary judgment as to this issue by ruling on whether Defendant kept time records for its Sales Coordinators.

On consideration of a motion for summary judgment, "[i]f the court does not grant all the relief requested . . . it may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). The purpose of this rule is to allow a court to "salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues." *United States v. Khan*, No. 3:17-cv-965-J-PDB, 2019 U.S. Dist. LEXIS 27270, at *43 (M.D. Fla.

---

[8] The Court notes that it does not consider whether summary judgment on the method of calculating damages is appropriate pursuant to some method other than the fluctuating workweek because neither party has moved for summary judgment on this issue.

Feb. 21, 2019) (quoting *D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014) (discussing the purposes of Rule 56(g)). Whether to enter an order pursuant to Rule 56(g) is discretionary. *Id.*

Pursuant to Rule 56(g), the Court will take this opportunity to salvage some of the judicial effort involved in ruling on the parties' cross motions for summary judgment. Defendant plainly admits that it "did not keep track of the Sales' Coordinators' hours worked prior to November 2016." (Doc. 82-2 at 1 (admitting); Doc. 82-3 at 21). Defendant has not presented any evidence to the contrary, nor even argued this is untrue. Plaintiffs have also produced evidence—which Defendant has not disputed—that Defendant did not keep complete time records for its Sales Coordinators since November 2016. (*See* Brennan Dep., Doc. 82-12, at 3–8). However, other than the undisputed fact that the time records kept by Defendant from November 2016 forward are not complete, the full extent or sufficiency of those records is not clear from the evidence on the record. Therefore, the Court will grant Plaintiffs' MSJ to the extent that it seeks a finding that Defendant did not keep track of the Sales Coordinators' hours worked prior to November 2016 and did not keep complete records of the Sales Coordinators' time from November 2016 forward. *See Belloso v. Asplundh Tree Expert*, No. 6:17-cv-2020-Orl-40GJK, 2019 U.S. Dist. LEXIS 136573, at *11 (M.D. Fla. July 16, 2019).

The Court next turns to Plaintiffs' request for summary judgment on the just and reasonable inference standard. *Anderson*, the case cited in Plaintiffs' MSJ, "recognized that once a plaintiff establishes a violation of the FLSA, the plaintiff must establish damages." *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008) (citing *Anderson*, 328 U.S. at 688). To establishing damages in a situation "where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the

consequences of that failure." *Id.* (citing *Anderson*, 328 U.S. at 688). Thus, "[w]hen an employer fails to keep accurate and adequate records, *Anderson* says that 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Jenkins v. Anton*, 922 F.3d 1257, 1271 (11th Cir. 2019) (emphasis omitted) (quoting *Anderson*, 328 U.S. at 687). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Etienne v. Inter-Cty. Sec. Corp.*, 173 F.3d 1372, 1375–76 (11th Cir. 1999) (quoting *Anderson*, 328 U.S. at 683–84).

Here, the Court has declined to grant summary judgment on the defenses of the administrative exemption and the combination exemption. Thus, Plaintiffs have not yet established a violation of the FLSA nor have they shown that they were improperly compensated. Indeed, if Defendant proves a proper FLSA exemption moving forward, there still exists the possibility that Defendant was in full compliance with the FLSA, and Plaintiffs' FLSA claims fail. However, this does not preclude the Court from granting summary judgment on a purely legal issue. The Eleventh Circuit has applied the *Anderson* "burden-shifting analysis in situations where no records were kept at all or no overtime was recorded." *Etienne*, 173 F.3d at 1376 (collecting cases). As the Court has determined above, this is true in the instant case for Sales Coordinators' hours prior to November 2016, so the *Anderson* standard will apply if Defendant does not establish an FLSA exemption at trial. *Jenkins*, 922 F.3d at 1271. However, as discussed above, there is not enough evidence on the record to demonstrate the insufficiency of time records from November 2016

forward, so the Court cannot reach a conclusion regarding the appropriate evidentiary burden for damages—if the issue of damages is reached at trial—for that time period. *See Etienne*, 173 F.3d at 1376 (declining to find error and affirming when the district court declined to instruct the jury as to the *Anderson* standard when the plaintiff failed to show time records "were inaccurate and incomplete to any significant degree"). Therefore, the Court will grant Plaintiffs' request for summary judgment as to the applicability of the *Anderson* standard for the time period prior to November 2016, and the Court will decline summary judgment as to the time period from November 2016 forward.

### 7. *Sales Coordinators' Overtime Hours*

Plaintiffs move for summary judgment on the issue of whether Defendant's Sales Coordinators were "compensated overtime in accordance with the FLSA." (Doc. 82 at 25). Plaintiffs contend that granting summary judgment on this question would "leav[e] open for trial any viable exemption defense and the measurement of the Sales Coordinators' damages." (*Id.*). Defendant does not dispute the underlying facts presented by Plaintiffs in support of this argument. Rather, Defendant contends that granting summary judgment as to the issue as phrased by Plaintiffs would in essence be granting summary judgment on Plaintiffs' case-in-chief and would only leave open the question of damages. Defendant believes that this is inappropriate because it has asserted exemptions as defenses to the FLSA claims.

As a threshold issue, "[a] claim of exemption under the FLSA is an affirmative defense." *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005); *U.S. CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1324 (11th Cir. 2018). As previously explained to the parties in this case, an affirmative defense operates not to dispute the allegations of a complaint but rather to "avoid[] liability, wholly, or partly, by new allegations of excuse, justification or other

negating matters." (Nov. 28, 2017 Report and Recommendation, Doc. 19, at 2, *adopted by*, Jan. 16, 2018 Order, Doc. 34, at 1 (citing *VP Props. & Devs., LLLP v. Seneca Specialty Ins. Co.*, 645 F. App'x 912, 916 (11th Cir. 2016) (citation omitted))). Thus, Plaintiffs' request for summary judgment on issues of fact to support elements of an FLSA claim is not improper, even though Defendant still has affirmative defenses under consideration after issuance of this summary judgment Order.

As discussed above, the Court will exercise its discretionary authority pursuant to Rule 56(g) and make a determination at the summary judgment stage on any material facts not in dispute. First, it is undisputed that Defendant's stores in question are ordinarily open Monday through Friday from 7:00 AM to 5:30 PM. (Doc. 82-3 at 24; Doc. 82-5 at 6). While Sales Coordinators were expected to complete their work between the scheduled hours of 7:00 AM and 5:00 PM, they were also expected to arrive fifteen to twenty minutes prior to opening and, when necessary, stay approximately one-half hour after closing. (Doc. 82-5 at 6–7). Sales Coordinators were also permitted to take an unspecified amount of time for lunch as long as there was appropriate coverage at the store. (*Id.* at 7). These facts are well-documented in the record and undisputed by Defendant, so the Court will grant summary judgment as to the determination of the days and hours worked insofar as specified above.

However, as discussed above regarding the salary basis element of the administrative exemption, there exists a disputed issue of material fact as to whether Sales Coordinators were paid on a salary or hourly basis. Therefore, the Court cannot yet determine whether Defendant's Sales Coordinators were "compensated overtime in accordance with the FLSA," (Doc. 82 at 25), because if they were exempt then they would not have been due overtime compensation. Summary judgment will be denied as to this point.

Second, Plaintiffs contend that it is undisputed that Defendant "failed to pay Sales Coordinator's proper overtime once they were classified as entitled to overtime after November 2016." (Doc. 82 at 25). Unhelpfully, Defendant has failed to provide any argument or citation to record evidence in dispute of this statement. Nonetheless, the evidence on the record does not show exactly what Plaintiffs suggest. Rather, Defendant has admitted that "it discovered an error in its payroll vendor's system which led to a miscalculation." (Doc. 82-4 at 5). This evidence shows that Defendant admits to an error in paying wages, but Defendant has not admitted that it failed to pay proper overtime. The source of the error—unpaid overtime or otherwise—is not evident from the facts on record at this stage. Thus, Plaintiffs' request for summary judgment will be denied on this issue and the follow-up issue of whether Defendant knew of Sales Coordinators working improper overtime hours.

### C.      Analysis—Tortious Interference Claim

Under Florida law, the elements of tortious interference with a business relationship are "(1) the existence of a business relationship[;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).

Defendant moves for summary judgment on Reese's tortious interference claim. Defendant argues that it was justified in sending the cease and desist letter for two reasons. First, Defendant contends that sending of the letter is protected by Defendant's First Amendment rights pursuant to the *Noerr* doctrine. *E. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). Second, Defendant argues that Reese cannot demonstrate the tortious interference element of unjustified interference. Reese counters that Defendant has waived any defense based on the *Noerr*

doctrine by not pleading it; even if a *Noerr* defense has not been waived, it is not applicable to the facts of this case; and there are disputed issues of material fact which prevent summary judgment on Reese's tortious interference claim.

The *Noerr-Pennington*[9] doctrine "protects private efforts to influence government officials in creating or implementing legislation that has anticompetitive effects [by] protect[ing] First Amendment rights to assemble and petition government." *Tec Cogeneration v. Fla. Power & Light Co.*, 76 F.3d 1560, 1570 (11th Cir. 1996). The Eleventh Circuit Court of Appeals has not addressed the applicability of the *Noerr-Pennington* doctrine in cases that fall completely outside of the scope of antitrust litigation, and district courts within the Eleventh Circuit have only done so rarely. *Silverhorse Racing, LLC v. Ford Motor Co.*, No. 6:16-cv-53-Orl-22KRS, 2016 U.S. Dist. LEXIS 185749, at *5, *7–8 (M.D. Fla. Apr. 27, 2016).

The threshold question here is whether the *Noerr-Pennington* doctrine can be applied to a state-law tortious interference claim that is unrelated to an antitrust action or the petitioning of government officials. Defendant has not cited—and the Court has not independently located—any case in the Eleventh Circuit where the *Noerr-Pennington* doctrine has been applied to facts similar to the instant situation. Therefore, based on the legal authority currently before the Court, as applied to the facts of this case, the Court finds that *Noerr-Pennington* is not applicable here. *Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-21113-CIV-TORRES CONSENT, 2007 U.S. Dist. LEXIS 9014, at *21–22 (S.D. Fla. Feb. 8, 2007) (declining to "extend the *Noerr-Pennington* doctrine to bar . . . traditional state-law tort claims" and noting that "[f]rankly, the doctrine has likely been extended far beyond what the exercise of judicial restraint should allow"); *but see*

---

[9] Defendant refers to its asserted defense as the *Noerr* doctrine, but the doctrine is actually created by two United States Supreme Court cases— *Noerr*, 365 U.S. 127 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965).

*Silverhorse Racing*, 2016 U.S. Dist. LEXIS 185749, at *9 (applying *Noerr-Pennington* to a tortious interference claim related to alleged trademark infringement). The Court does not reach any conclusion as to whether some other form of protection akin to *Noerr-Pennington* may apply here. *See Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*, No. 09-60397-CIV, 2009 U.S. Dist. LEXIS 73540, at *6 (S.D. Fla. Aug. 19, 2009) (citing *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1561 (11th Cir. 1992)). Therefore, the Court need not determine whether Defendant waived any defense pursuant to *Noerr-Pennington* because the Court finds that the doctrine does not apply here.

Looking to the elements of a tortious interference claim, Defendant asserts that it is entitled to summary judgment because Plaintiffs cannot demonstrate the third required element—an intentional and unjustified interference with the business relationship by Defendant. Plaintiffs argue that there exists a disputed issue of material fact that precludes summary judgment on this issue.

Defendant does not have a copy of an executed non-compete or non-solicitation agreement for Reese. (Corp. Rep. Dep., Doc. 87-11, at 7). And the new employment checklist for Reese indicates that the Agreements were not completed, at least not at the time of Reese's hiring. (Thompson Dep., Doc. 87-10, at 6–9). The only evidence on the record suggesting that a version of the Agreements executed by Reese even exists is the statement of one of Defendant's employees. (Doc. 84-1 at 2; Defs.' Answers to Pl.'s Interrogs., Doc. 87-21, at 2). Thus, this is a disputed fact, which cannot currently be resolved by the evidence on the record. Therefore, the Court cannot determine whether Defendant's action of sending the cease and desist letter was unjustified—part of the third element of a tortious interference claim—because the Court does not have undisputed evidence showing that signed Agreements ever existed. If executed Agreements

did exist, then Defendant's action of sending the letter may have been justified, but if the executed Agreements for Reese never existed, then the justification for the letter would disappear. Defendant has failed to meet its burden on summary judgment for Reese's tortious interference claim, so Defendant's MSJ will be denied as to this claim.

## IV.    CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1.  Plaintiff Reese's Renewed Motion to Have the Final Judgment Include Punitive Damages (Doc. 83) is **GRANTED**.

2.  Plaintiffs' Motion for Partial Summary Judgment (Doc. 82) is **GRANTED in part** and **DENIED in part**. Plaintiffs' MSJ is **GRANTED** as to the following undisputed material facts and issues of law:

    a.  Defendant is not entitled to the commissioned work exemption.

    b.  Defendant is not entitled to the 29 U.S.C. § 259 good faith defense.

    c.  Defendant may not use the fluctuating workweek method to calculate overtime prior to November 2016.

    d.  Defendant did not keep track of the Sales Coordinators' hours worked prior to November 2016 and did not keep complete records of the Sales Coordinators' hours worked from November 2016 forward.

    e.  The *Anderson* standard applies for the time period prior to November 2016.

    f.  Defendant's stores are ordinarily open Monday through Friday from 7:00 AM to 5:30 PM. Sales Coordinators were expected to arrive fifteen to twenty minutes prior to opening and, when necessary, stay approximately one-half hour after closing.

g.  Plaintiffs' MSJ is otherwise **DENIED**.

3.  Defendant's Motion for Summary Judgment (Doc. 84) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on January 16, 2020.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record