# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JAY E. REESE,**

      **Plaintiff,**

v.                                                               Case No:   6:17-cv-1574-Orl-41GJK

**FLORIDA BC HOLDINGS, LLC,**

      **Defendant.**

---

**RONALD WARD,**

      **Plaintiff,**

v.                                                                Case No:   6:18-cv-459-Orl-41GJK

**FLORIDA BC HOLDINGS, LLC,**

      **Defendant.**

---

## ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **RENEWED JOINT MOTION FOR APPROVAL OF SETTLEMENT, STIPULATED JUDGMENT AND FOR DISMISSAL WITH PREJUDICE (Doc. No. 135)** |
| **FILED:** | June 5, 2020 |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

### I.   BACKGROUND.

On August 30, 2017, Jay E. Reese, individually and as a class representative, filed a complaint alleging that Defendant, Florida BC Holdings, LLC d/b/a/ Synergy Equipment

("Synergy"), his former employer, violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime (the "Reese Litigation"). Reese Litigation, Doc. No. 2. Reese also alleged that Synergy tortiously interfered with his employment relationship with his subsequent employer. *Id.* at 11-12. On March 27, 2018, Ronald Ward, individually and as a class representative, filed a complaint alleging that Synergy, also his former employer, violated the FLSA by failing to pay him overtime (the "Ward Litigation"), in Case No. 6:18-cv-459-Orl-41GJK. Ward Litigation, Doc. No. 1.

Synergy sells and leases landscaping and farming equipment out of twelve locations—ten in Florida and two in Georgia. Reese Litigation, Doc. No. 25-1 at ¶¶ 3, 4. Synergy employed Reese and Ward as "Sales Coordinators." Reese Litigation, Doc. No. 24-1 at 2, 3, 5, 6, 8, 9; Ward Litigation, Doc. No. 1 at ¶ 37.

Reese and Ward aver that they worked more than forty hours per week, but did not receive additional pay. Reese Litigation, Doc. No. 24-1 at 3; Ward Litigation, Doc. No. 33-1 at 2. They state that Synergy "had a common policy of not paying Sales Coordinators' time-and-a-half their regular rate of pay for all overtime hours worked. Specifically, [Synergy] had a common policy of categorizing Sales Coordinators as exempt from overtime pay." Reese Litigation, Doc. No. 24-1 at 3; Ward Litigation, Doc. No. 33-1 at 2. On August 7, 2017, Synergy filed an answer in the Reese Litigation denying Plaintiff's claims and asserting numerous affirmative defenses. Reese Litigation, Doc. No. 20. On May 18, 2018, Synergy filed an Answer and Affirmative Defenses in the Ward Litigation. Ward Litigation, Doc. No. 20.

On April 30, 2018, the Court adopted the Report and Recommendation in the Reese Litigation conditionally certifying a class of Sales Coordinators for Synergy's Orlando and Daytona locations. Reese Litigation, Doc. 49. On February 20, 2019, the Court conditionally

certified two classes in the Ward Litigation. Ward Litigation, Doc. No. 43. The "misclassification class," consists of all employees of Synergy who: (1) are or were employed by Synergy as "Sales Coordinators" at any location other than the Orlando and Daytona Beach locations during the preceding three years; (2) were classified as exempt from the FLSA; and (3) worked more than forty hours in a work week without being paid proper overtime compensation. *Id.* at 2. The "miscalculation class," consists of all employees of Synergy who: (1) are or were employed by Synergy as Sales Coordinators since November 2016; (2) worked more than forty hours in a work week; and (3) did not receive proper overtime because: (a) Synergy failed to include all weekly remuneration in the Sales Coordinator's regular rate of pay when calculating the overtime rate, and (b) failed to include all hours worked when calculating overtime. *Id.*

On April 9, 2019, the Court consolidated the Ward and Reese Litigations. Ward Litigation, Doc. No. 53. The following Sales Coordinators opted in to the litigation (collectively, "Opt-In Plaintiffs"): Joshua Kennedy, Reese Litigation, Doc. No. 20; Paul Celaya, Reese Litigation, Doc. No. 21; Thomas Lee, Reese Litigation, Doc. No. 53; Jennifer Brennan, Reese Litigation, Doc. No. 71; Shaw Brinkley, Reese Litigation, Doc. No. 74; Jacquelyn Beauchamp, Reese Litigation, Doc. No. 76; Shawn Manganiello, Reese Litigation, Doc. No. 77; Jerry Wayne Jenkins, Reese Litigation, Doc. No. 79; Andrew Carr (the misclassification class), Ward Litigation, Doc. No. 45; Travis[1] Wilder (the misclassification class), Ward Litigation, Doc. No. 46; Juan Idarraga (the miscalculation class), Ward Litigation, Doc. No. 47; Daniel Bermudez (the misclassification class), Ward Litigation, Doc. No. 49; and Paul W. Tidwell (the miscalculation class), Ward Litigation, Doc. No. 50.

---

[1] In his opt-in notice, Wilder's first name is listed as "Traus," but in the Amended Settlement Agreement, he is listed as "Travis Wilder." Ward Litigation, Doc. No. 46; Reese Litigation, Doc. No. 135-1 at 2, 3, 4, 20.

On January 16, 2020, the Court entered an order on the parties' motions for summary judgment. Reese Litigation, Doc. No. 104. Among other things, the Court denied summary judgment on the administrative exemption, granted summary judgment for Reese, Ward, and the Opt-Plaintiffs (collectively, the "Sales Coordinators") on the commissioned work exemption, denied summary judgment on the combination exemption, granted summary judgment for the Sales Coordinators on the good faith defense as to liability; denied summary judgment for the Sales Coordinators on the good faith defense as to liquidated damages; granted summary judgment for the Sales Coordinators on the just and reasonable inference standard regarding the amount and extent of overtime work before November 2016; and denied summary judgment as to the just and reasonable inference standard after November 2016. *Id.* at 19, 25, 27, 29, 30, 36, 41, 42.

On April 30, 2020, after engaging in discovery and three separate mediations, the parties filed a Joint Motion for Approval of Settlement, Stipulated Judgment and for Dismissal with Prejudice.[2] Reese Litigation, Doc. No. 118. The parties settled the FLSA claims, but Reese's tortious interference claim remains pending. *Id.* The motion was denied because the itemized settlement amounts for the Sales Coordinators exceeded the amount Synergy agreed to pay. Doc. No. 128. On June 5, 2020, the parties filed a renewed motion correcting the error with an Amended Settlement Agreement attached (the "Renewed Motion"). Doc. Nos. 135, 135-1. For the reasons that follow, the Court grants the Renewed Motion.

---

[2] On April 30, 2020, the parties consented to the undersigned conducting all proceedings and entering a final order on both the joint motion for approval of the settlement agreement and the Sales Coordinators' motion for attorney's fees and costs. Doc. No. 120. On May 1, 2020, the Court referred the motions to the undersigned. Doc. No. 122.

## II.  LAW.

In *Lynn's Food Stores, Inc. v. United States Department of Labor*, 679 F.2d 1350 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable. *Id*. Before approving an FLSA settlement, the Court must scrutinize it to determine if it is a fair and reasonable resolution of a bona fide dispute. *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement. *Id*. at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

> (1) the existence of collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and
> (6) the opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, Case No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007), *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[3]

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee agreements. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (citing *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net[.]")).[4] In *Silva*, the Eleventh Circuit held:

> That Silva and Zidell entered into a contingency contract to establish Zidell's compensation if Silva prevailed on the FLSA claim is of little moment in the context of FLSA. FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. *See Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted). To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee. *See United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"); *see also Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F.Supp.2d 1259 (M.D. Fla. 2008).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[4] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

307 F. App'x at 351-52. For the Court to determine whether the proposed settlement is reasonable, plaintiff's counsel must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between the plaintiff and counsel, or otherwise. *Id*. When a plaintiff receives less than a full recovery, any payment from plaintiff's recovery above a reasonable fee improperly detracts from the plaintiff's recovery.[5] Thus, a potential conflict can arise between counsel and client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs.[6] It is the Court's responsibility to ensure that any such allocation is reasonable. *Id.* As the Court interprets the *Lynn's Food Stores, Inc.* and *Silva* cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide. In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

An alternative means of demonstrating the reasonableness of attorney's fees and costs was set forth in *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009). In *Bonetti*, the Honorable Gregory A. Presnell held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) *represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement*

---

[5] From a purely economic standpoint, a defendant is largely indifferent as to how its settlement proceeds are divided as between a plaintiff and counsel. Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

[6] This potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary.

> *does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.*

*Id.* at 1228 (emphasis added). Judge Presnell maintained that if the matter of attorney's fees "[is] addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id*. The Court finds this reasoning persuasive.

### III. ANALYSIS.

#### A. Settlement of FLSA Claims.

This case involves disputed issues of liability under the FLSA, which constitutes a bona fide dispute. Reese Litigation, Doc. Nos. 2, 20, 104; Ward Litigation, Doc. Nos. 1, 20. Under the Amended Settlement Agreement, it states that Synergy will pay the gross sum of $100,000 to the Sales Coordinators. Reese Litigation, Doc. No. 135-1 at 4. The Sales Coordinators are receiving the following amounts:

| Name | Settlement Amount |
| --- | --- |
| Jacquelyn Beauchamp | $2,871.57 |
| Daniel Bermudez | $15,028.39 |
| Jennifer Brennan | $15,404.37 |
| Shaw Brinkley | $9,476.23 |
| Andrew Carr | $2,073.41 |
| Paul Celaya | $10,043.75 |
| Juan Idarraga | $1,138.26 |
| Jerry Jenkins | $2,739.47 |

| | |
|---|---|
| Joshua Kennedy | $4,566.71 |
| Thomas Lee | $3,443.03 |
| Shawn Manganiello | $6,655.48 |
| Jay Reese | $12,501.65 |
| Paul Tidwell | $1,578.72 |
| Ronald Ward | $10,046.61 |
| Travis Wilder | $2,432.35 |

*Id.*

"The total damages claimed by the Sales Coordinators in their pretrial statement was $468,592.86." Reese Litigation, Doc. No. 135 at 9. The parties represent that the Sales Coordinators will receive approximately 42.6% of their unpaid overtime wages, and the payments represent overtime at a half-time rate. *Id.* at 9-10. The Sales Coordinators agreed to a half-time rate because of the risk of recovering no overtime and because the Court's summary judgment "ruling appears to leave open other methods of calculating damages at a half-time rate." *Id.* at 11. Since the Sales Coordinators are receiving less than the amount they claimed, they compromised their claims under the FLSA. *See Caseres v. Texas de Brazil (Orlando) Corp.*, 6:13-cv-1001-Orl-37KRS, 2014 WL 12617465, at *2 (M.D. Fla. April. 2, 2014).

The Sales Coordinators are also waiving their right to liquidated damages. Reese Litigation, Doc. No. 135 at 12. Generally, "[a] plaintiff cannot waive her right to liquidated damages in a FLSA settlement when there is no genuine dispute about whether she is entitled to them." *Nall v. Mal–Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). In light of this proposition, courts have approved FLSA settlement agreements in which plaintiffs waive their claim to liquidated damages upon the parties'

representation that there was a bona fide dispute regarding entitlement to such damages. *See Chaparro v. Brevard Extraditions, Inc.*, No. 6:16–cv–776–Orl–40DCI, 2017 WL 1078193, at * 3 (M.D. Fla. Mar. 3, 2017) ("Plaintiff was entitled to waive liquidated damages given the parties' representation that there was a genuine dispute regarding Plaintiff's entitlement to them . . . ."); *Goodrich v. Park Ave. Dermatology, P.A.*, No. 3:15–CV–1435–J–32PDB, 2016 WL 6782771, at * 3 n. 2 (M.D. Fla. Oct. 25, 2016) ("The absence of liquidated damages here does not render the settlement agreement unfair because the parties explain [the plaintiff] has not shown evidence to support them and they dispute liability under the FLSA."); *Patterson v. Acad. Fire Prot., Inc.*, No. 3:13–cv–87–J–34JBT, 2014 WL 169812, at *6 (M.D. Fla. Jan. 8, 2014) (finding FLSA settlement agreement fair and reasonable where plaintiff did not receive liquidated damages under the agreement because there was a genuine dispute as to whether plaintiff was entitled to such damages).

Here, the parties state that they have a bona fide dispute as to whether Defendant violated the FLSA, and consequently, whether the Sales Coordinators are entitled to liquidated damages. Reese Litigation, Doc. No. 135 at 12. The Court notes that summary judgment as to Defendant's good faith defense as to liquidated damages was denied as not ripe because the Sales Coordinators had not yet established a violation of the FLSA. Reese Litigation, Doc. No. 104 at 30. In light of the parties' bona fide dispute, the Sales Coordinators' agreement to waive liquidated damages does not render the Amended Settlement Agreement unfair or unreasonable.

The case involves disputed issues regarding FLSA liability. Reese Litigation, Doc. Nos. 2, 20, Doc. No. 104; Ward Litigation, Doc. Nos. 1, 20. Mindful of the uncertainty associated with continued litigation, the parties decided to amicably resolve their dispute. Reese Litigation, Doc. No. 135 at 13. The parties were represented by experienced counsel during the settlement

negotiations. *Id.* Finally, the terms of the Amended Settlement Agreement were the result of negotiations without any coercion, collusion, or undue influence. *Id.* After receiving sufficient information to make informed decisions, the parties decided to settle their dispute. *Id.* at 13-14. Considering the foregoing, and the strong presumption favoring settlement, the settlement amount is fair and reasonable.

### B.  Attorney's Fees.

The parties agree that the Sales Coordinators' attorney's fees and costs will be determined by the Court. Reese Litigation, Doc. No. 135 at 16. Thus, the issue of attorneys' fees and costs did not affect the amount paid to the Sales Coordinators. *See Bonetti*, 715 F. Supp. 2d at 1228.

### C.  Final Class Certification.

The parties state that if the Court requires final class certification prior to approving the Amended Settlement Agreement, then they stipulate, for settlement purposes only, both to the Opt-In Sales Coordinators being similarly situated to Reese and Ward under 29 U.S.C. § 216(b) and to final certification of the class. Doc. No. 135 at 16-17. The Court finds that final class certification is not necessary prior to approving the Amended Settlement Agreement. *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-CV-695-FTM-99MRM, 2017 WL 3700629, at *2 (M.D. Fla. Aug. 24, 2017) (finding "persuasive the authorities cited by the parties in which jurists on this Court approved a settlement at the conditional certification stage without requiring a final certification prior to approving a settlement."), *report and recommendation adopted*, 2017 WL 3668889 (M.D. Fla. Aug. 25, 2017); *but see Burton v. Util. Design, Inc.*, No. 607-CV-1045ORL-22KRS, 2008 WL 2856983, at *2 (M.D. Fla. July 22, 2008) (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007), to support the statement that "it appears that the Court must make some final

class certification finding before approving a collective action settlement.").[7] Thus, the Court will not address the issue of final class certification.

## IV. CONCLUSION.

Based on the foregoing, it is **ORDERED** as follows:

1. The Renewed Motion (Doc. No. 135) is **GRANTED**;

2. Counts I and II of *Jay E. Reese, et al. v. Florida BC Holdings, LLC. d/b/a Synergy Equipment*, Case No.: 6:17-cv-1574-Orl-41GJK are **DISMISSED WITH PREJUDICE**;

3. *Ward, et al. v. Florida BC Holdings, LLC d/b/a Synergy Equipment*, Case No.: 6:18-cv-459-CEM-GJK is **DISMISSED WITH PREJUDICE**; and

4. The Clerk is directed to close *Ward, et al. v. Florida BC Holdings, LLC d/b/a Synergy Equipment*, Case No.: 6:18-cv-459-CEM-GJK.

**DONE AND ORDERED** in Orlando, Florida, on June 8, 2020.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[7] There appears to be no binding authority requiring the Court to certify a class prior to approving a settlement agreement under the FLSA. In *Anderson v. Cagle's, Inc.*, 488 F.3d at 953, the Eleventh Circuit was reviewing the district court's decision decertifying a FLSA class and described the two stages of class certification in FLSA cases. The court stated that the district court makes a factual determination on the similarly situated question, which is typically done on the defendant's motion for decertification and that at the second stage there is a possibility that the plaintiffs may not succeed in maintaining a collective action based solely on allegations and affidavits. *Id.* There is no discussion of approving settlement agreements under the FLSA, much less that final certification of a conditional class is a requirement to do so. *Id.*