UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JAY E. REESE,**

      **Plaintiff,**

v.                                             Case No:   6:17-cv-1574-Orl-41GJK

**FLORIDA BC HOLDINGS, LLC,**

      **Defendant.**

---

**RONALD WARD,**

      **Plaintiff,**

v.                                             Case No:   6:18-cv-459-Orl-41GJK

**FLORIDA BC HOLDINGS, LLC,**

      **Defendant.**

---

## ORDER

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **SALES COORDINATORS' MOTION FOR ATTORNEY'S FEES AND COSTS (Doc. No. 119)** |
| **FILED:** | April 30, 2020 |

**THEREON it is ORDERED that the motion is GRANTED IN PART AND DENIED IN PART**.

**I.  BACKGROUND.**

On August 30, 2017, Jay E. Reese, individually and as a class representative, filed a complaint alleging that Defendant, Florida BC Holdings, LLC d/b/a/ Synergy Equipment

("Synergy"), his former employer, violated the Fair Labor Standards Act ("FLSA") by failing to pay him overtime (the "Reese Litigation"). Doc. No. 2.[1] Reese also alleged that Synergy tortiously interfered with his employment relationship with his subsequent employer. *Id.* at 11-12. On March 27, 2018, Ronald Ward, individually and as a class representative, filed a complaint alleging that Synergy, also his former employer, violated the FLSA by failing to pay him overtime (the "Ward Litigation"), in Case No. 6:18-cv-459-Orl-41GJK. Ward Litigation, Doc. No. 1.

Synergy sells and leases landscaping and farming equipment out of twelve locations—ten in Florida and two in Georgia. Doc. No. 25-1 at ¶¶ 3, 4. Synergy employed Reese and Ward as "Sales Coordinators." Doc. No. 24-1 at 2, 3, 5, 6, 8, 9; Ward Litigation, Doc. No. 1 at ¶ 37.

Reese and Ward aver that they worked more than forty hours per week, but did not receive "additional pay." Doc. No. 24-1 at 3; Ward Litigation, Doc. No. 33-1 at 2. They state that Synergy "had a common policy of not paying Sales Coordinators' time-and-a-half their regular rate of pay for all overtime hours worked. Specifically, [Synergy] had a common policy of categorizing Sales Coordinators as exempt from overtime pay." Doc. No. 24-1 at 3; Ward Litigation, Doc. No. 33-1 at 2. On August 7, 2017, Synergy filed an answer in the Reese Litigation denying Plaintiff's claims and asserting numerous affirmative defenses. Doc. No. 20. On May 18, 2018, Synergy filed an Answer and Affirmative Defenses in the Ward Litigation. Ward Litigation, Doc. No. 20.

On April 30, 2018, the Court adopted the Report and Recommendation in the Reese Litigation conditionally certifying a class of Sales Coordinators for Synergy's Orlando and Daytona locations. Doc. 49. On February 20, 2019, the Court conditionally certified two classes in the Ward Litigation. Ward Litigation, Doc. No. 43. The "misclassification class" consists of all

---

[1] Unless otherwise noted, citations to documents are to those filed in the Reese Litigation, Case No.: 6:17-cv-1574-Orl-41GJK.

employees of Synergy who: (1) are or were employed by Synergy as "Sales Coordinators" at any location other than the Orlando and Daytona Beach locations during the preceding three years; (2) were classified as exempt from the FLSA; and (3) worked more than forty hours in a work week without being paid proper overtime compensation. *Id.* at 2. The "miscalculation class," consists of all employees of Synergy who: (1) are or were employed by Synergy as Sales Coordinators since November 2016; (2) worked more than forty hours in a work week; and (3) did not receive proper overtime because: (a) Synergy failed to include all weekly remuneration in the Sales Coordinator's regular rate of pay when calculating the overtime rate, and (b) failed to include all hours worked when calculating overtime. *Id.*

On April 9, 2019, the Court consolidated the Ward and Reese Litigations. Ward Litigation, Doc. No. 53. The following Sales Coordinators opted into the litigation (collectively, "Opt-In Plaintiffs"): Joshua Kennedy, Doc. No. 20; Paul Celaya, Doc. No. 21; Thomas Lee, Doc. No. 53; Jennifer Brennan, Doc. No. 71; Shaw Brinkley, Doc. No. 74; Jacquelyn Beauchamp, Doc. No. 76; Shawn Manganiello, Doc. No. 77; Jerry Wayne Jenkins, Doc. No. 79; Andrew Carr (the misclassification class), Ward Litigation, Doc. No. 45; Travis[2] Wilder (the misclassification class), Ward Litigation, Doc. No. 46; Juan Idarraga (the miscalculation class), Ward Litigation, Doc. No. 47; Daniel Bermudez (the misclassification class), Ward Litigation, Doc. No. 49; and Paul W. Tidwell (the miscalculation class), Ward Litigation, Doc. No. 50.

On January 16, 2020, the Court entered an order on the parties' motions for summary judgment. Doc. No. 104. Among other things, the Court made the following rulings: denied summary judgment on the administrative exemption; granted summary judgment for Reese, Ward,

---

[2] In his opt-in notice, Wilder's first name is listed as "Traus," but in the Amended Settlement Agreement, he is listed as "Travis Wilder." Doc. No. 135-1 at 2, 3, 4, 20; Ward Litigation, Doc. No. 46.

and the Opt-In Plaintiffs (collectively, the "Sales Coordinators") on the commissioned work exemption; denied summary judgment on the combination exemption; granted summary judgment for the Sales Coordinators on the good faith defense as to liability; denied summary judgment for the Sales Coordinators on the good faith defense as to liquidated damages; granted summary judgment for the Sales Coordinators on the just and reasonable inference standard regarding the amount and extent of overtime work before November 2016; and denied summary judgment as to the just and reasonable inference standard after November 2016. *Id.* at 19, 25, 27, 29, 30, 36, 41, 42.

On April 30, 2020, after engaging in discovery and three separate mediations, the parties filed a joint motion for approval of the settlement agreement and the Sales Coordinators filed a motion for an award of attorney's fees.[3] Doc. Nos. 118, 119. The parties settled the FLSA claims, but Reese's tortious interference claim remains pending. Doc. No. 118. The parties agreed that Synergy would pay $100,000 to the Sales Coordinators. Doc. No. 135-1 at 4. They represented that the Sales Coordinators will receive approximately 42.6% of their unpaid overtime wages, and the payments represent overtime at a half-time rate. Doc. No. 135 at 9-10. The Sales Coordinators also waived their right to liquidated damages. Doc. No. 135 at 12. The parties agreed that the Sales Coordinators are entitled to an award of reasonable attorney's fees and costs, but that the amount would be decided by the Magistrate Judge.[4] Doc. No. 135-1 at 5. The motion to approve the settlement agreement was denied because the itemized settlement amounts for the Sales Coordinators listed in the agreement exceeded the amount Synergy agreed to pay. Doc. No. 128.

---

[3] On April 30, 2020, the parties consented to the undersigned conducting all proceedings and entering final orders on the joint motion for approval of the settlement agreement and the Sales Coordinators' motion for attorney's fees and costs. Doc. No. 120. On May 1, 2020, the Court referred the motions to the undersigned. Doc. No. 122.

[4] The settlement agreement also states, "Synergy will pay the reasonable attorney's fees and costs determined by the Court within fourteen (14) calendar days of the Court's Order." Doc. No. 135-1 at 5.

On June 5, 2020, the parties filed a renewed motion correcting the error with an Amended Settlement Agreement attached. Doc. Nos. 135, 135-1. On June 8, 2020, the Court granted the renewed motion. Doc. No. 136.

Remaining before the Court is the Sales Coordinators' motion for an award of attorney's fees and costs (the "Motion"), filed on April 30, 2020. Doc. No. 119. On May 21, 2020, Synergy filed its response to the Motion (the "Response"). Doc. No. 127. On June 12, 2020, with the Court's permission, Doc. No. 139, the Sales Coordinators filed a reply to the Response (the "Reply"). Doc. No. 140.

## II. ANALYSIS.

"Congress has provided that the court in an FLSA action 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'" *Dionne v. Floormasters Enters., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012) (quoting 29 U.S.C. § 216(b)). The parties agreed that the Sales Coordinators are entitled to reasonable attorney's fees and costs, Doc. No. 135-1 at 5, but disagree as to the amount of the fees and costs, Doc. Nos. 119, 127, 140. The Sales Coordinators request $282,600 in attorney's fees, $4,105.23 in attorney expenses, and $7,139.74 in costs. Doc. No. 119 at 23. The Sales Coordinators also request post-judgment interest on the attorney's fees and costs. *Id.* Synergy claims that a reasonable attorney's fee award is $35,325 and no attorney expenses should be awarded. Doc. No. 127 at 17. Synergy agrees that the Sales Coordinators are entitled to $7,139.74 in costs. *Id.* Thus, only the amount of attorney's fees and attorney expenses are in dispute.

### A. Attorney's Fees

Motions for attorney's fees should not result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The order on a motion for attorney's fees must contain a

clear and concise explanation of the court's reasoning. *Id.* The Court uses the familiar lodestar method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Id.* at 433. The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The *Johnson* factors are the following: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

The court need not explicitly address the *Johnson* factors, however, and most of them "are already subsumed in the lodestar. . . ." *In re Home Depot Inc.*, 931 F.3d 1065, 1083, 1090 (11th Cir. 2019). The role of the *Johnson* factors is limited when the lodestar method is used. *Id.* at 1090. The number of hours spent on the case reflects the novelty and complexity of the issues. *Id.* at 1083. The hourly rates reflect the attorneys' skill and experience. *Id.* "As for the results obtained, this factor should be folded into the quality-of-representation factor. This is so because the results obtained are relevant to attorney's fees only if those results are attributable to counsel's

performance, rather than, say, the other side dropping the ball." *Id.* (citation omitted). Enhancing the fee based on the quality of the representation should only be done "in the rare cases where the fee applicant demonstrates that the 'superior attorney performance is not adequately taken into account in the lodestar calculation.'" *Id.* (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)). "[A]fter counsel proposes an hourly rate based on the prevailing market rate in the community, courts may consider the *Johnson* factors to determine if the proposed rate accurately reflects the true worth of counsel." *Id.* at 1091. "[T]he *Johnson* factors are relevant only in the rare cases where they are not fully captured in the lodestar." *Id.*

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted). In determining if the requested rate is reasonable, the court may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Id.* at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances, or opinion evidence of reasonable rates. *Id*.

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In demonstrating that their hours are reasonable, counsel "should have maintained records to

show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). A fee opponent's failure to explain with specificity the particular hours he or she views as "excessive, redundant, or otherwise unnecessary" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted). When a court finds the number of hours billed unreasonably high, a court has two choices: it may review each entry and deduct the unreasonable time or it may reduce the number of hours by an across-the-board cut. *Bivins*, 548 F.3d at 1350.

Once the lodestar is calculated, the court then decides whether an adjustment is necessary. *Bivins*, 548 F.3d at 1350. A downward adjustment "is merited only if the prevailing party was partially successful in its efforts." *Id.* at 1350-51. The *Johnson* factors are considered in determining the lodestar and "should not be reconsidered in making either an upward or downward adjustment to the lodestar . . . ." *Id.* at 1352.

    1.  <u>The Lodestar</u>

The Sales Coordinators request the following rates: Scott C. Adams, Esq. -- $325; N. Ryan LaBar, Esq. -- $300; and Judith Cane (paralegal) -- $105. Doc. No. 119 at 7-12. Synergy does not dispute that the requested rates are reasonable. Doc. No. 127 at 6 n.4. Based on the undersigned's

knowledge and experience concerning reasonable rates, plus the *Johnson* factors, the requested rates are reasonable.

The Sales Coordinators claim the following number of hours were reasonably expended in this case for the prosecution of the FLSA claims: Adams -- 699; LaBar -- 50; Cane -- 385. Doc. No. 119 at 12. The Sales Coordinators state that they excluded administrative or secretarial time and time spent on Reese's tortious interference claim. *Id.* The Sales Coordinators submit over 100 pages of time records to support their claim. Doc. No. 119-1 at 18-136. The Sales Coordinators also submit the expert witness declaration of John Finnigan, Esq. Doc. No. 119-2. Finnigan has been a member of The Florida Bar since 1993 and specializes in employment and labor law. *Id.* at ¶¶ 3, 4. Finnigan practices primarily in Orlando and Central Florida. *Id.* at ¶ 4. He reviewed the docket; the Sales Coordinators' counsel's files regarding pleadings, motions, and discovery; and their billing records; and Finnigan is generally aware of the amount of the settlement. *Id.* at ¶¶ 14, 17. Finnigan opines that all the time the Sales Coordinators request is reasonable. *Id.* at ¶¶ 30, 32.

Synergy argues that the time submitted by the Sales Coordinators is excessive. Doc. No. 127 at 9-13. Synergy contends that the Sales Coordinators included time spent on Reese's tortious interference claim and that time spent on the tortious interference claim is intermingled with time spent on the FLSA claims. *Id.* at 9, 10-11, 13. It also argues that time spent on pretrial matters after the parties agreed to settle is not reasonable. *Id.* at 9-10. Synergy states that the Sales Coordinators included time unrelated to their FLSA claims, such as preparing records for Reese's unemployment file. *Id.* at 11. Synergy points to several entries that it claims are for administrative tasks. *Id.* at 11-12. It argues that it should not pay for time spent on the Sales Coordinators' motions that were denied. *Id.* at 12. Finally, it argues that there are numerous examples of excessive billing.

*Id.* at 13. Rather than an itemized deduction, Synergy requests that the Court impose a 50% cut in the number of hours requested. *Id.*

The Sales Coordinators argue that Synergy has not met its burden of demonstrating a 50% cut is warranted because Synergy made generalized objections. Doc. No. 140 at 3. When Synergy did provide examples, the Sales Coordinators argue that Synergy indicated the wrong timekeeper, did not identify the date of the time entries, or failed to provide page citations. *Id.* However, "the Sales Coordinators agree to exclude the time identified by Synergy as outlined on Exhibit 'C.'" *Id.* Exhibit C lists 14.9 hours of Adams's time and 9.4 hours of Cane's time, for a total of $5,829.50. Doc. No. 140-3 at 2. The Sales Coordinators state that if an across-the-board reduction is necessary, then ten percent is more appropriate than Synergy's recommendation. Doc. No. 140 at 9 n.35.

"Where fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). Instead, "it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction." *Id.*; *see also In re Home Depot Inc.*, 931 F.3d 1065, 1089 (11th Cir. 2019). "The level of specificity required by district courts is proportional to the specificity of the fee opponent's objections." *In re Home Depot Inc.*, 931 F.3d at 1089.

First, Synergy argues that the Sales Coordinators included time spent on Reese's tortious interference claim and that time spent on the tortious interference claim is intermingled with time spent on the FLSA claims. Doc. No. 127 at 9, 10-11, 13. The Sales Coordinators argue that these two claims are intertwined, and therefore the fees are appropriate. Doc. No. 140 at 4. The case the Sales Coordinators rely on to support this argument, *Certilus v. Peeples*, No. 81-46-CIV-OC-12, 1984 WL 3192, at *1 (M.D. Fla. Dec. 4, 1984), however, was one in which the defendants did not

respond to the fee application, and the Court found that the attorney's fee award should include all the fees because significant relief was obtained under both the FLSA and the Farm Labor Contractor Registration Act, and the remaining claim accounted for less than two percent of the plaintiffs' recovery. Doc. No. 140 at 4 n.11. Here, Synergy objects to the Motion and there has been no recovery yet on the tortious interference claim. As Synergy demonstrated specific examples including time spent on the tortious interference claim, a reduction in the number of hours the Sales Coordinators claim is appropriate.

Second, Synergy argues that time spent on unrelated matters other than the tortious interference claim was included, but it only cites .3 hours of time as an example. Doc. No. 127 at 11. Synergy also points to several entries that it claims are for administrative tasks, consisting of 5 total hours. *Id.* at 11-12. The examples Synergy gives amount to a *de minimis* amount of the Sales Coordinators' assertion of over 1,000 hours as reasonable.

Third, Synergy argues that it should not pay for time spent on the Sales Coordinators' motions that were denied. *Id.* at 12. Synergy does not cite any authority for this principle. *Id.* In response, the Sales Coordinators cite *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*, 346 F. App'x 403, 404 (11th Cir. 2009),[5] in which the Eleventh Circuit stated, "[T]he law in this circuit is that a prevailing party entitled to attorneys' fees is not to be penalized for failed motions." Doc. No. 140 at 4 n.12. Synergy fails to demonstrate that the Sales Coordinators' number of hours should be reduced for time spent on motions on which they did not prevail.

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Finally, Synergy argues that there are numerous examples of excessive billing in the time records. Doc. No. 127 at 12. The examples Synergy gives to support this argument amount to 27.4 hours. *Id.* at 12-13.

Synergy demonstrates that some reduction in the number of hours claimed by the Sales Coordinators is appropriate, but fails to show that 50% is an appropriate deduction. Synergy asserts that it demonstrates that at least 90 of the 1,134 hours claimed are unreasonable. Doc. No. 127 at 13. That is approximately eight percent of the hours claimed. Considering that not all of Synergy's arguments for reducing the amount of reasonable hours claimed by the Sales Coordinators have merit, that the Sales Coordinators submitted an expert affidavit attesting to the reasonableness of the number of hours claimed, Doc. No. Doc. No. 119-2 at ¶¶ 30, 32, that the Sales Coordinators achieved conditional certification of three classes in two cases and were mostly successful on the parties' motions for summary judgment, Synergy is not entitled to the reduction it requests. A reduction is appropriate, and the Court follows the Sales Coordinators' recommendation of 10%.

The Court has already determined the reasonable hourly rate. The chart below sets forth the reasonable number of hours and the reasonably hourly rate.

| Name | Rate | Hours Claimed | 10% reduction | Total |
|---|---|---|---|---|
| Scott C. Adams, Esq. | $325 | 700.6[6] | 630.5 | $204,912.50 |
| N. Ryan LaBar, Esq. | $300 | 50 | 45 | $13,500.00 |
| Judith Cane | $105 | 375.6[7] | 338 | $35,490 |
| Totals | | 1,126.2 | 1,013.5 | $253,902.50 |

Thus, the lodestar is $253,902.50.

---

[6] This includes a deduction of the 14.9 hours of time the Sales Coordinators agree should be deducted and the addition of the 16.5 hours Adams spent reviewing the Response, preparing the request to file a reply to the Response, and research regarding the Response and Reply. Doc. No. 140 at 10 n.36; Doc. No. 140-3 at 2.

[7] This includes a deduction of the 9.4 hours of time the Sales Coordinators agree should be deducted. Doc. No. 140-3 at 2.

### 2. Adjustment to Lodestar

Synergy argues that the lodestar should be "reduced to account for the extremely limited success achieved by [the Sales Coordinators], their rejection of Rule 68 offers early in the litigation, and the unreasonable positions they took in the litigation." Doc. No. 127 at 14. Synergy argues that a 75% reduction in the lodestar is appropriate. *Id.* at 15.

Although Synergy now argues that the Sales Coordinators achieved "extremely limited success," *id.* at 14, Synergy (along with the Sales Coordinators) represented to the Court when it sought approval of the settlement agreement that the Sales Coordinators would be receiving 42.6% of their claimed overtime wages, Doc. No. 135 at 9-10. The lodestar here is $253,902.50, and the Sales Coordinators recovered a total of $100,000, Doc. No. 135-1 at 4.

The cases that Synergy relies on in which the courts reduced the attorney's fees awarded due to limited success and excessive litigation demonstrate that this is not such a case. *See Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 712 (11th Cir. 2014) (FLSA plaintiff recovered $1,075.44 after a three-day bench trial and sought $79,850.63 in attorney's fees); *Andrike v. Maple Way Cmty., Inc.*, No. 8:11-CV-1939-T-24, 2013 WL 1881135, at *1 (M.D. Fla. May 3, 2013) (plaintiff claimed she was owed $34,272 in overtime under the FLSA, settled for $2,500, and sought attorney's fees of $20,674); *Brandt v. Magnificent Quality Florals Corp.*, No. 07-20129-CIV, 2011 WL 4625379, at *1, *3 (S.D. Fla. Sept. 30, 2011) (plaintiffs sought $65,301.12 in overtime and liquidated damages under the FLSA, recovered $1,208.52 after a five-day jury trial, and sought attorney's fees of $95,272.50); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1345 (S.D. Fla. 2007) (plaintiff sought $600,000 in damages based on claims under the FLSA, race discrimination, and retaliation under the Florida Whistleblower Act,

recovered only under the FLSA for $3,493.62, and sought attorney's fees of $377,090.62). This is not a case where the claimed fees are more than ten times greater than the plaintiffs' recoveries.

Synergy asserts that the Court "must" consider the Rule 68 offers made to the Sales Coordinators in determining the reasonableness of the attorney's fee award. Doc. No. 127 at 7-8. The examples Synergy gives do not support its argument that its offers warrant reducing the lodestar. Synergy asserts that it offered Ward $8,000 on July 26, 2018, and Ward ultimately recovered $10,065.61 almost two years later. *Id.* Synergy asserts that this is a small gain for litigating hundreds of hours later. *Id.* at 8. It is, however, a 25% increase in what Ward recovered from what Synergy first offered him. Synergy states that it offered Reese $10,000 in December 2017, and Reese ultimately recovered an additional $2,542.65 under the settlement. *Id.* at 15. This is another 25% increase from the original offer. Synergy offered Celaya $6,500 in December 2017, and Celaya recovered $10,043.75 under the settlement, thus increasing the original offer by 54%. *Id.* at 4. Synergy's fourth example is even less convincing. It points to an offer it made to Kennedy of $2,000 in December 2017, and Kennedy's eventual recovery under the settlement of $4,566.71. *Id.* at 8 n.5. Kennedy more than doubled his original offer. Although these may seem like small dollar amounts to Synergy, to the workers they employed and did not properly compensate, the percentages are substantial. Synergy fails to demonstrate that the Sales Coordinators acted unreasonably in contravention of the purpose of Rule 68 in entertaining Synergy's settlement offers.[8] *See generally Rodriguez v. Molina Healthcare Inc.*, 806 F. App'x 797, 805 (11th Cir. 2020) (holding that district court did not abuse its discretion in declining to reduce attorney's fee award in FLSA case because defendants failed to show that the "[p]laintiffs in bad faith rejected

---

[8] "The plain purpose of Rule 68 is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5, (1985).

substantially similar [earlier] offers with the intent of unnecessarily prolonging litigation."); *Baxter v. Automated Gate Sys., Inc.*, No. 6:09-CV-350-ORL-18, 2011 WL 1790330, at *5 (M.D. Fla. May 10, 2011) (reducing attorney's fees in FLSA case where the plaintiff was twice presented with settlement offers that would have concluded the case much earlier and were equal to or greater than the final settlement amount); *Phillips v. SC Capital Ventures, Inc.*, No. 19-62555-CIV, 2020 WL 2988381, at *5 (S.D. Fla. June 4, 2020) (reducing fees awarded where FLSA plaintiff's attorney rejected settlement offer for full amount at start of case and refused to negotiate attorney's fees); *Vasconcelo v. Miami Auto Max*, No. 17-21765-CV, 2018 WL 5020486, at *9 (S.D. Fla. July 6, 2018), *report and recommendation adopted*, 2019 WL 275946 (S.D. Fla. Jan. 22, 2019) (reducing lodestar by 70% because FLSA plaintiff's refusal to accept multiple settlement offers "was unreasonable in light of the ultimate outcome . . . .").

"[I]n FLSA cases, fee awards commonly exceed the actual damages awarded, especially where, as here, both sides vigorously contest the case." *Brandt*, No. 07-20129-CIV, 2011 WL 4625379, at *13. Synergy fails to demonstrate that a reduction to the lodestar is appropriate. The Sales Coordinators are entitled to $253,902.50 as attorney's fees.

### B. Attorney Expenses

The Sales Coordinators seek $4,105.23 in "attorney expenses." Doc. No. 119 at 19. These costs consist of the following: mediation; travel to Palm Bay to communicate with Ward; costs of copies, envelopes, and postage for the collective action notices; travel to an Opt-In Plaintiff's deposition; lunch during the corporate representative's deposition; parking at mediation; and the expert witness's fee for preparing the affidavit. *Id.* at 18-19. Synergy argues that the Sales Coordinators may only recover the expenses and costs permitted under 28 U.S.C. § 1920. Doc. No. 127 at 15.

Synergy argues that the Sales Coordinators' reliance on *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799 (11th Cir. 2012), is misplaced. Doc. No. 127 at 16-17. In *Mock*, the plaintiff was awarded attorney's fees and costs under the ADEA, but the district court declined to award the plaintiff his travel expenses. *Mock*, 456 F. App'x at 802. The Eleventh Circuit affirmed because travel expenses were not recoverable as costs under 28 U.S.C. § 1920, and they were also not recoverable as attorney's fees. *Id.* The travel expenses were not recoverable as attorney's fees because they were incurred due to the plaintiff retaining non-local counsel, which the district court found was unnecessary, and not because they were not recoverable as attorney's fees in the first instance. *Id.*

Synergy also relies on *Padurjan v. Aventura Limousine & Transportation Service, Inc.*, 441 F. App'x 684 (11th Cir. 2011). Doc. No. 127 at 15-16. In *Padurjan*, the plaintiff argued that the trial court erred in not awarding fees under the FLSA for those incurred by his expert fee witness. *Padurjan*, 441 F. App'x at 686. The Eleventh Circuit held that the district court did not err because no statute provided for the shifting of this witness fee. *Id.*

The Sales Coordinators cite *Lockwood v. CIS Services, LLC*, No. 3:16-CV-965-J-39PDB, 2019 WL 2226126 (M.D. Fla. May 3, 2019), *report and recommendation adopted*, 2019 WL 3383628 (M.D. Fla. June 13, 2019), to support their argument. Doc. No. 119 at 17. *Lockwood* squarely addresses the issue before the Court. The plaintiffs sought "attorney expenses" under the FLSA of airfare, lodging, postage, delivery, and mediation expenses, arguing that they are part of the attorney's fees recoverable. *Lockwood*, No. 3:16-CV-965-J-39PDB, 2019 WL 2226126, at *21. The defendants argued that these are costs and not recoverable because they are not included under 28 U.S.C. § 1920. *Id.* Although there is no binding precedent on the issue, circuit courts of appeal held such expenses are recoverable as attorney's fees. *Id.* (citing *West v. Nabors Drilling USA,*

*Inc.*, 330 F.3d 379, 395-96 (5th Cir. 2003); *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997); *Neufeld v. Searle Labs.*, 884 F.2d 335, 342 (8th Cir. 1989); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1989); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). Also, two Eleventh Circuit cases found such expenses recoverable as attorney's fees under 42 U.S.C. § 1988 (*Dowdell v. City of Apopka*, 698 F.2d 1181, 1190 (11th Cir. 1983)), and ERISA (*Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014)). *Id.* at *21-22. The rationale in *Evans*—that the definition of costs in 28 U.S.C. § 1920 is not controlling and that expenses reasonably incurred in preparing, settling, and litigating a case that are billed to fee-paying clients as the prevailing practice in the legal community may be awarded as attorney's fees—is equally applicable to the attorney's fees provision in the FLSA. *Id.* at *22. Because the prevailing practice in the city is to bill fee-paying clients for travel, lodging, postage, and mediation, those expenses are recoverable under the FLSA as part of the attorney's fee award. *Id.*

  *Lockwood* is directly on point. The attorney's expenses the Sales Coordinators seek, based on the undersigned's knowledge and experience, are those typically paid by fee-paying clients in Central Florida. Finnigan's affidavit also states that these costs are standard and reasonable and that the clients in employment and FLSA cases typically pay for mediator costs. Doc. No. 119-2 at ¶ 35. The Sales Coordinators may therefore recover as part of the attorney's fee award the following: the costs of mediation; travel to Palm Bay to communicate with Ward; costs of copies, envelopes, and postage for the collective action notices; travel to an Opt-In Plaintiff's deposition; lunch during the corporate representative's deposition; and parking at mediation. Payment of the Sales Coordinator's expert witness on attorney's fees is precluded by *Padurjan*, however, as it specifically categorizes this fee as a witness fee and not part of an attorney's fee. *Padurjan*, 441

F. App'x at 686. Therefore, the Sales Coordinators are awarded $2,355.23 as part of their attorney's fees.

### C. Costs

Synergy agrees that the Sales Coordinators are entitled to $7,139.74 in costs. Doc. No. 127 at 17. Thus, the Court determines that the Sales Coordinators shall recover $7,139.74 in costs from Synergy.

### D. Post-judgment Interest

The Sales Coordinators ask the Court to award post-judgment interest on the award of attorney's fees and costs. Doc. No. 119 at 23. Synergy did not respond to this request. Doc. No. 127. The Sales Coordinators are awarded post-judgment interest on the attorney's fees and costs "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). On June 8, 2020, the Court approved the settlement agreement and this case was dismissed with prejudice. Doc. No. 136 at 12. June 8, 2020 is therefore the date upon which interest begins to accrue.

### III. CONCLUSION.

Based on the foregoing, it is **ORDERED** that the Motion, Doc. No. 119, is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiffs are awarded attorney's fees of $253,902.50, attorney expenses of $2,355.23, and $7,139.74 in costs;

2. Otherwise, the Motion is **DENIED**; and

3. The Clerk is directed to enter judgment for Plaintiffs and against Defendant in the amount of $263,397.47, plus post-judgment interest at the legal rate prescribed in 28 U.S.C. § 1961(a) from June 8, 2020.

**DONE** and **ORDERED** in Orlando, Florida, on August 27, 2020.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties